ACCEPTED
13-13-00645-CV
THIRTEENTH COURT OF APPEALS
CORPUS CHRISTI, TEXAS
7/10/2015 11:08:32 AM
CECILE FOY GSANGER
CLERK

No. 13-13-00645-CV

FILED IN
13th COURT OF APPEALS
CORPUS CHRISTI/EDINBURG, TEXAS
7/10/2015 11:08:32 AM
CECILE FOY GSANGER
Clerk

# IN THE THIRTEENTH COURT OF APPEALS
## AT CORPUS CHRISTI-EDINBURG, TEXAS

SERGE DASQUE

*Appellant,*

v.

FABIOLA AIDEE DASQUE

*Appellee.*

On Appeal from the
County Court at Law No. 2, Hidalgo County, Texas
(Cause No. F-1947-12-2  )

## APPELLANT'S BRIEF

### STRASBURGER & PRICE L.L.P.

Kelly H. Leonard
State Bar No. 24078703
kelly.leonard@strasburger.com
909 Fannin Street, Suite 2300
Houston, Texas  77056
(713) 951-5619 (Tel)
(713) 960-5660 (Fax)

*Counsel for Serge Dasque*

ORAL ARGUMENT REQUESTED

2155613.1/SPH/15555/0611/070915

# IDENTITY OF PARTIES AND COUNSEL

## Appellant

Serge Dasque

## Trial Counsel

Glenn V. Devino
2017 Magnolia Street
Mission, TX 78573
956) 583-4825 (Tel)
(956) 583-4835 (Fax)

-and-

C. Brandon Holubar
King Law Firm
3409 North 10th Street
McAllen, TX 78501
(956) 687-6294 (Tel)
(956) 687-5514

-and-

Serge Dasque
Pro Se


## Counsel on Appeal

Kelly H. Leonard
State Bar No. 24078703
kelly.leonard@strasburger.com
STRASBURGER & PRICE, LLP
909 Fannin Street, Suite 2300
Houston, Texas  77056
(713) 951-5619 (Tel)
(713) 960-5660 (Fax)

i

**Appellee**

Fabiola Aidee Dasque

**Trial and Appellate Counsel**

Amber L. Vanschuyver
State Bar No. 24066232
AVanSchuyver@trla.org
TEXAS RIO GRANDE LEGAL AID
316 S. Closner Boulevard
Edinburg, TX 78539
(956) 393-6200 (Tel)

ii

2155613.1/SPH/15555/0611/070915

# TABLE OF CONTENTS

IDENTITY OF PARTIES AND COUNSEL ..........................................................................i

TABLE OF CONTENTS............................................................................................... iii

INDEX OF AUTHORITIES............................................................................................v

DESIGNATION OF RECORD REFERENCES .................................................... viii

STATEMENT OF THE CASE.......................................................................................ix

STATEMENT REGARDING ORAL ARGUMENT ..............................................ix

STATEMENT OF THE ISSUES PRESENTED.........................................................x

STATEMENT OF FACTS ...............................................................................................1

    I.     After a brief marriage and a long relationship together, S.D. filed
        for divorce from F.D. in December 2008.......................................................1

    II.    A final judgment was entered in the December 2008 case. ......................4

    III.   F.D. petitions for divorce a second time and S.D. complains of the
        jurisdictional defects in her filing...............................................................5

    IV.   The Court nevertheless proceeded to enter a new divorce decree
        and support orders. ........................................................................................8

SUMMARY OF ARGUMENT ......................................................................................10

ARGUMENT AND AUTHORITIES...........................................................................11

    I.     The trial court lacked subject matter jurisdiction to enter the Final
        Divorce Decree..............................................................................................11

        A.    The parties' marital assets and liabilities were previously
            adjudicated, depriving the court of jurisdiction. ...........................12

        B.    The trial court similarly lacked jurisdiction to adjudicate
            custody and support for the couple's minor child..........................15

        C.    The reinstatement, to the extent necessary, was effective. ............16

    II.    The trial court erred in entering the Divorce Decree by unequally
        dividing the parties' community property.................................................18

        A.    An award of community property must be equitable and just
            and cannot result from an abuse of discretion. .............................19

        B.    S.D. and F.D. mutually benefitted from the credit card debt
            incurred during their marriage. ....................................................20

2155613.1/SPH/15555/0611/070915

III.    Trial court erred in awarding F.D. primary custody of C.S.D. with S.D. receiving only limited visitation with his son. ..................................23

       A.    Custody matters are reviewed for an abuse of discretion. .............23

       B.    S.D. should have received extended visitation with C.S.D., consistent with their long-time arrangement..................................24

CONCLUSION AND PRAYER ........................................................................28

CERTIFICATE OF COMPLIANCE..................................................................30

CERTIFICATE OF SERVICE ..........................................................................30

iv

# INDEX OF AUTHORITIES

**Page(s)**

**CASES**

*Alfonso v. Skadden*,
251 S.W.3d 52 (Tex. 2008)..................................................................................11

*Baxter v. Ruddle*,
794 S.W.2d 761 (Tex. 1990) ..............................................................................12

*Chacon v. Chacon*,
222 S.W.3d 909 (Tex. App.—El Paso 2007, no pet.) ........................................20

*Charles L. Hardtke Inc. v. Katz*,
813 S.W.2d 548 (Tex. App.—Houston [1st Dist.] 1991, no writ) ..............16, 17

*Chavez v. Chavez*,
269 S.W.3d 763 (Tex. App—Dallas 2008, no pet.) ..........................................20

*Douglas v. Am. Title Co.*,
196 S.W.3d 876 (Tex. App.—Houston [1st Dist.] 2006, no pet.)........................1

*Downer v. Aquamarine Operators, Inc.*,
701 S.W.2d 238 (Tex. 1985) ..............................................................................20

*Dubai Petroleum Co. v. Kazi*,
12 S.W.3d 71 (Tex. 2000).................................................................................11

*Emerald Oaks Hotel/Conference Ctr., Inc. v. Zardenetta*,
776 S.W.2d 577 (Tex. 1989) ..............................................................................16

*Energo Int'l Corp. v. Modern Indus. Heating, Inc.*,
722 S.W.2d 149 (Tex. App.—Dallas 1986, no writ)..........................................18

*Fleming v. Easton*,
998 S.W.2d 252 (Tex. App.—Dallas 1999, no pet.) ..........................................15

*Hagen v. Hagen*,
282 S.W.3d 899 (Tex. 2009) ..............................................................................12

*In re Doe 2*,
19 S.W.3d 278 (Tex. 2000)..................................................................................23

2155613.1/SPH/15555/0611/070915

*In re M.W.T.*,
12 S.W.3d 598 (Tex. App.—San Antonio 2000, pet. denied)............................24

*In re N.A.S.*,
100 S.W.3d 670 (Tex. App.—Dallas 2003, no pet.) ........................................24

*Jansen v. Fitzpatrick*,
14 S.W.3d 426 (Tex. App.—Houston [14th Dist.] 2000, no pet.) ....................15

*Mapco, Inc. v. Forrest*,
795 S.W.2d 700 (Tex. 1990) ...........................................................................11

*N-S-W Corp. v. Snell*,
561 S.W.2d 798 (Tex. 1977) (orig. proceeding) ..............................................17

*Nealy v. Home Indem. Co.*,
770 S.W.2d 592 (Tex. App.—Houston [14th Dist] 1989, no writ)....................16

*Office of Pub. Util. Counsel v. Pub. Util. Com'n of Tex.*,
878 S.W.2d 598 (Tex. 1994) ..............................................................................1

*Pearson v. Fillingim*,
332 S.W.3d 361 (Tex. 2011) .............................................................................12

*Reiss v. Reiss*,
118 S.W.3d 439 (Tex. 2003) .............................................................................12

*Schlueter v. Schlueter*,
975 S.W.2d 584 (Tex. 1998) .............................................................................19

*Smith v. Smith*,
143 S.W.3d 206 (Tex. App.—Waco 2004, no pet.) ..........................................22

*State Bar of Texas v. Gomez*,
891 S.W.2d 243 (Tex. 1994) .............................................................................11

*Tex. Ass'n of Bus. v. Tex. Air Control Bd.*,
852 S.W.2d 440 (Tex. 1993) .............................................................................11

*Vallone v. Vallone*,
664 S.W.2d 455 (Tex. 1982) .............................................................................19

2155613.1/SPH/15555/0611/070915

*Walker v. Packer*,
827 S.W.2d 833 (Tex.1992)..................................................................24

*Worford v. Stamper*,
801 S.W.2d 108 (Tex. 1990) ...............................................................24

*Zieba v. Martin*,
928 S.W.2d 782 (Tex. App.—Houston [14th Dist.] 1996, no writ)...................20

**STATUTES**

TEX. FAM. CODE ANN. § 7.001 ..............................................................19

TEX. FAM. CODE ANN. § 7.0006(a) .........................................................13

TEX. FAM. CODE ANN. § 7.0006(b) .........................................................13

TEX. FAM. CODE ANN. § 9.002 ..............................................................13

TEX. FAM. CODE ANN. § 9.007(a) ..........................................................13

TEX. FAM. CODE ANN. § 9.007(b) ..........................................................13

TEX. FAM. CODE ANN. § 9.008 .............................................................13

TEX. FAM. CODE § 153.002..................................................................24

TEX. FAM. CODE § 153.003..................................................................24

TEX. FAM. CODE § 153.004..................................................................24

TEX. FAM. CODE § 153.256..................................................................25

Texas Family Code § 153.312 ..............................................................25

**RULES**

TEX. R. CIV. P. 165a(3)................................................................16, 17

**OTHER AUTHORITIES**

Barbara Anne Kazen, Division of Property at the Time of Divorce, 49
BAYLOR L. REV. 417, 424-28 (1997) .................................................19, 21

2155613.1/SPH/15555/0611/070915

## **DESIGNATION OF RECORD REFERENCES**

The record in this appeal consists of the clerk's record and several volumes of the reporter's record across three separate filings. This brief uses the following conventions in citing the record:

Clerk's Record:

(CR:[page]) or (CR: Ex.[number]:[page]);

Reporter's Record:

(RR [vol]:[page]) or (RR [vol]: Ex.[number]);

First Supplemental Reporter's Record:

(1st Supp. RR [vol]:[page]) or (1st Supp. RR [vol]: Ex.[number]:[page]);

Second Supplemental Reporter's Record:

(2nd Supp. RR [vol]:[page]) or (2nd Supp. RR [vol]: Ex.[number]:[page]);

Appendix:

(App. [letter]).

2155613.1/SPH/15555/0611/070915

## STATEMENT OF THE CASE

This is an appeal from a Final Decree of Divorce. (App. A). The trial court rendered an August 12, 2013 judgment dividing the couple's community estate and confirming their separate property along with child custody matters although the parties were previously divorced in a separate proceeding. The trial court therefore lacked jurisdiction to enter the final judgment made the basis of this appeal. Moreover, in rendering judgment in this divorce case, the trial court abused its discretion in awarding a disproportionate amount of community debt to S.D. and in failing to award him custody or extended visitation with his son.

## STATEMENT REGARDING ORAL ARGUMENT

Serge Dasque respectfully requests oral argument in this matter.

2155613.1/SPH/15555/0611/070915

# STATEMENT OF THE ISSUES PRESENTED

1. Is the Divorce Decree entered by the trial court void due to lack of jurisdiction?

2. Did the trial court abuse its discretion in entering the Divorce Decree by disproportionately dividing community assets?

3. Did the trial court abuse its discretion in limiting Mr. Dasque's visitation with his minor son although the parties previously agreed to extended visitation between Mr. Dasque and his son every week and substantial evidence supported extending custody to Mr. Dasque or ordering extended visitation?

2155613.1/SPH/15555/0611/070915

**STATEMENT OF FACTS**

This is an appeal from a divorce decree. (App. A). While the factual background of this case is not complicated, a related proceeding resulting in a final judgment make the facts necessary to this appeal more extensive.

The divorce of Serge Dasque ("S.D.") and Fabiola Dasque ("F.D.") spans four separate cause numbers in Hidalgo County. The first action, Cause F-5441-08-7, *Dasque v. Dasque*, was filed in December 2008 and a final Divorce Decree was entered in the case on April 20, 2012. The second case, Cause P-075-09-5, *Dasque v. Dasque*, was filed in February 2009 and dismissed for want of prosecution. The third case, Cause F-501-12-2, *In re C.S.D.*—a Suit Affecting the Parent-Child Relationship—was consolidated with the cause number giving rise to this appeal, Cause F-1947-12-2, *Dasque v. Dasque*. Of these various proceedings, the first and last are necessary to appreciate the factual background to this appeal.[1]

I.  **After a brief marriage and a long relationship together, S.D. filed for divorce from F.D. in December 2008.**

S.D. and F.D. were married on July 6, 2007 and ceased living together in November 2008. (RR4:7; CR:10, 154). Though S.D. and F.D. were married for

---

[1] S.D. asks the Court to take juridical notice of the dockets in each of these cause numbers and their filings. *See, e.g., Douglas v. Am. Title Co.*, 196 S.W.3d 876, 878 (Tex. App.—Houston [1st Dist.] 2006, no pet.) (appellate court may take judicial notice of records between same parties involving same subject matter); *Office of Pub. Util. Counsel v. Pub. Util. Com'n of Tex.*, 878 S.W.2d 598, 600 (Tex. 1994) (court of appeals has power to take judicial notice for first time on appeal). For the Court's convenience, Mr. Dasque has provided copies of certain of these filings and hearing transcripts within the appendix.

1

only a short while, they had a long relationship before their marriage. Their son, C.S.D., was born to them in October 2001 while they were unmarried but dating. (*See* RR4:6-7). S.D. has at all times accepted paternity of C.S.D. and has eagerly participated in his upbringing.

Following a separation, S.D. filed for divorce from F.D. in December 2008.[2] S.D. contended the marriage had become insupportable because of discord or conflict of personalities that destroyed the legitimate ends of the marriage relationship and prevented any reasonable expectation of reconciliation.[3] In his Original Petition, S.D. asked that he and F.D. be named Joint Managing Conservators of C.S.D. and that he have the right to establish C.S.D.'s primary residence.[4] S.D. further asked that F.D. be ordered to make child support payments on behalf of C.S.D.[5] F.D. appeared in the suit and filed a counter petition for divorce.[6]

Initially, the case proceeded quickly. In May 2009, the court held a "Final Decree Hearing."[7] During the hearing, the parties read an agreement into the record with regard to possession and child support and the court approved their

---

[2] See App. B, Original Petition for Divorce in Cause F-5441-08-5, at p. 1-2.
[3] See App. B, Original Petition for Divorce in Cause F-5441-08-5, at p. 2.
[4] See App. B, Original Petition for Divorce in Cause F-5441-08-5, at p. 4.
[5] See App. B, Original Petition for Divorce in Cause F-5441-08-5, at p. 4.
[6] See App. C, Counter Petition for Divorce in Cause F-5441-08-5.
[7] See App. D, May 7, 2009 Final Divorce Hearing Transcript.

2

agreement and granted the divorce.[8] (CR:154). The parties agreed at the time to extended visitation between C.S.D. and S.D. and they agreed S.D. would pay $150.00 per month in child support.[9] But because the issue of community debt was left unresolved, the court agreed to address that issue at a later time and did not enter a written divorce decree.[10] (CR:154).

In March 2010, after multiple settings to resolve the issue of community debt, the trial court notified the parties that it had set a dismissal hearing for May 12, 2010 to determine whether the case should be dismissed for want of prosecution.[11] When the parties did not oppose dismissal and apparently did not appear for the dismissal hearing, the trial court dismissed Cause No. F-5441-08-5 for want of prosecution.[12]

Within thirty days of the dismissal order, F.D. petitioned the trial court to reinstate the case.[13] In her Verified Motion to Reinstate, F.D. observed the trial court had plenary power to reinstate that case and that good cause existed to reinstate the matter.[14]

F.D. requested an oral hearing on her motion to reinstate, which the court scheduled for October 7, 2010. At the hearing, the parties reached an agreement to

---

[8] See App. D, May 7, 2009 Divorce proceedings at p. 4-8.
[9] See App. D, May 7, 2009 Divorce proceedings at p. 4-8.
[10] See App. D, May 7, 2009 Divorce proceedings at p. 7-8.
[11] See App. E, March 12, 2010 DWOP Notice.
[12] See App. F, August 11, 2010 Order of Dismissal in Cause F-5441-08-5.
[13] See App. G, Respondent's Verified Motion to Reinstate filed September 10, 2010.
[14] See App. G, Respondent's Verified Motion to Reinstate filed September 10, 2010.

3

reinstate the case.[15]  The trial court "accept[ed] the agreement of counsel and reinstate[d] the case" but did not reduce its oral ruling to writing.[16]

## II.  A final judgment was entered in the December 2008 case.

Following the reinstatement hearing, the case was transferred from Court County Court at Law No. 5 to County Court at Law No. 7.[17]

Upon receiving the case, County Court at Law No. 7 issued interim orders for visitation of C.S.D. In its orders, the court, "after examining the record and hearing the evidence and argument of counsel," found "all necessary prerequisites of the law have been legally satisfied and that the Court has jurisdiction of this case and of all the parties."[18]  The court then set a final hearing on divorce, which culminated in an April 20, 2012 Decree of Divorce and Modified Visitation Order. As with its interim orders, the Decree of Divorce recites that the trial court reviewed the record and concluded that "it ha[d] jurisdiction over th[e] cause of action and the parties."[19]

The April 2012 Decree of Divorce and Modified Visitation Order classifies the parties' property and divides community assets and debts.  The Decree also provides for the care of C.S.D., including adjudicating parental rights, visitation,

---

[15] See App. H, October 7, 2010 Reinstatement Hearing Transcript at p. 4-5.
[16] See id.
[17] See App. I, Order of Transfer and Acceptance.
[18] See App. J, Interim Orders for Visitation dated December 14, 2011.
[19] See App. K, Decree of Divorce and Modified Visitation Order.

4

custody, support and other matters. Portions of the Decree differ from the agreement reached by the parties in May 2009 at the Final Divorce Hearing.

## III. F.D. petitions for divorce a second time and S.D. complains of the jurisdictional defects in her filing.

Two months after County Court at Law No. 7 entered its April 2012 Decree of Divorce and Modified Visitation Order, F.D. filed a second petition for divorce. (CR:9).

Doubting the court's authority to render a second divorce between the parties, S.D. moved to dismiss the case for lack of jurisdiction. (CR:46, 70). S.D. advised the court "[F.D.'s] [P]etition is moot in that the parties are divorced and order of conservatorship, possession, access and support have been rendered, by that certain Decree of Divorce and Modified Visitation Order rendered by the Court on April 20, 2012." (CR:46, 70). He urged "the said Petition being moot as all relief requested therein has been granted by the prior divorce Decree, any orders rendered in connection with the said Petition should be set aside as null." (CR:46, 70). S.D. included a copy of the Final Decree of Divorce in Cause No. F-5441-08-7 in support of his motion. (*Id.*).

S.D. again explained his confusion with regard to the underlying proceedings during a June 18, 2012 status conference: "I don't even know I don't even know why we have to be here for this case, because we've been divorced already since May the 7th of 2009. . . I have a copy of the transcript, okay, just to

5

prove that we've been divorced already. . . . I also have the copy of Final Decree of the divorce." (RR 3:5)

In response to S.D.'s jurisdictional complaints, F.D. attempted to describe the grounds for seeking a second decree of divorce. At an initial conference in the case, her counsel explained:

> COUNSEL: What has happened in this case, Your Honor, is there was a divorce originally filed back in 2008 by the now Respondent in this case. He's the Petitioner in the other case. . . . Mr. Dasque is actually here, Your Honor -- the Respondent. . . .
>
> THE COURT: Okay.
>
> COUNSEL: What happened, Your Honor, Mr. Dasque had filed for divorce back in 2008, and that case had been dismissed for Want of Prosecution.
>
> THE COURT: Okay.
>
> COUNSEL: We had filed a Motion -- a Verified Motion to Reinstate, Your Honor. At that time, Legal Aid was still representing Ms. Dasque, but we -- I wasn't the attorney of record. Mr. Dasque was represented, at that time, by Brandon Holubar.
>
> THE COURT: Right.
>
> COUNSEL: What happened was that the both parties appeared for the Motion to Reinstate. The Court, apparently, granted the Motion to Reinstate. There was never --
>
> THE COURT: Nobody did an Order.
>
> COUNSEL: Nobody ever submitted an Order, Your Honor, back in 2010. We kept going forward on the case as if there had -- as if it was fine.
>
> THE COURT: There was an order, but there was no Order.

6

COUNSEL: There was no Order. So that -- we had a Divorce Decree that's void. And that just was brought up to our attention, Your Honor, because the Attorney General's Office were reviewing the case and they said this case --

THE COURT: You have no Order.

COUNSEL: We have no Order. Right. So that's why we're here today.

THE COURT: You're here today, so it's re-filed? It was re-filed, right?

COUNSEL: Yes, Your Honor.

Though F.D.'s counsel cited the Attorney General's objections to the original Divorce Decree as grounds for filing a second divorce petition, the Attorney General's objections were never fully clarified by the parties.

Instead, the record reveals that the dual divorce proceedings caused considerable confusion within the office. The Attorney General's Office made this confusion known to the trial court:

MS. DIAZ: Good morning, Your Honor. Ana Diaz for the Attorney General's Office. I'm here on F-1947-12-2.

THE COURT: Right.

MS. DIAZ: Viewing the Court's file, I believe Mr. Glenn Devino filed a Motion to Dismiss Ms. Fabiola Dasque's Divorce Petition. I'm a little confused because we have a Divorce Order under F-10-1947-12-B, but the Cause Number is F-5441-08-7 that was signed April 20th, 2012. This Court rendered Temporary Orders for this Petitioner, Ms. Fabiola Dasque, filed on June 12th, 2012. So I'm kind of unclear as to which came first under which cause number.

THE COURT: We need to, I guess –

MS. DIAZ: The other one is County Court Seven.

THE COURT: Why don't we do this – why don't we set, when we get, you know –

MS. DIAZ: Sure.

THE COURT: -- Get all our ducks in order and see where we're at.

MS. DIAZ: Yes, sir.

(RR2:4-5). The record does not contain any follow up to this colloquy.

## IV. The Court nevertheless proceeded to enter a new divorce decree and support orders.

Though the court did not rule on S.D.'s motion or consult with the Attorney General about the dual divorce proceedings, it proceeded to address the parties' assets and liabilities and the care of C.S.D.

The court held a final hearing and trial in June 2013. (RR4:1-45 and RR5:1-75). S.D. testified at the hearing that he sought custody of C.S.D. and wanted a divorce from F.D. due to their mutual differences. Concerning the family's income, S.D. testified both he and F.D. were substitute teachers who relied on credit cards to fund their daily living expenses. (RR5:25-26; 51-53). S.D. reported his income in 2012 was $22,988.00. (RR5:51). S.D. further testified C.S.D. was well-cared for during his time at S.D.'s home. (RR5:17-18). C.S.D. had his own bedroom at his father's house. (*Id.*) During their time together, S.D. assisted his son with his homework, fed him and addressed his needs without issue. (*Id.*) Conversely, C.S.D.'s interaction with his mother was complicated in ways that

2155613.1/SPH/15555/0611/070915

impaired F.D.'s ability to look after C.S.D.'s best interests. (RR5:21-24). S.D. complained of specific instances to support his contention that F.D. neglected C.S.D. and failed to look after his basic needs. *Infra* at 26-27.

Confirming much of S.D.'s testimony on the community's assets and liabilities, F.D. testified the couple accrued significant credit card debt during the course of their marriage. F.D. testified that both she and S.D. worked as substitute teachers and earned $16,000 to $17,000 per year in 2012 and that they primarily looked to credit cards to support their daily living expenses, such as electrical bills. (RR4:19-20). She asked "that any credit card debt that was taken out during the marriage, that the Court subtract from that any expenses that S.D. made to pay other credit cards that were opened prior to the marriage." (RR4:16).

Regarding C.S.D., F.D. testified she had agreed in the past to extended visitation between S.D. and C.S.D., but asked for modification of the custody arrangement after approximately three years because "it was very difficult for [her] and it was also very difficult for the boy." (RR4:23-24). However, she agreed S.D. made meals for C.S.D. (RR4:27) and that a social report concluded both she and S.D. made good parents, among other matters. (RR4:36, 39; RR5:6).

In connection with this testimony, the court entered a divorce decree awarding F.D. primary custody of C.S.D. and S.D. visitation every other week. The court further divided the parties' debts and ordered S.D. responsible for the

9

bulk of their community obligations. The Court found S.D.'s net resources per month to be $1,557.96 and ordered S.D. to pay 20% of his net resources in child support each month for a total of $312.00 each month beginning September 1, 2013 in addition to medical support. (CR:179-80).

## SUMMARY OF ARGUMENT

S.D. and F.D. are bound by a prior divorce decree entered in April 2012. That decree divided their community assets and liabilities and addressed custody of their minor child. Because S.D. and F.D. have been previously divorced, the trial court lacked jurisdiction to enter the Final Divorce Decree made the subject of this appeal.

Notwithstanding this jurisdictional defect, the Final Divorce Decree places a significant portion of the couple's debts on S.D.'s shoulders and grants him only limited visitation with his son. But S.D. and F.D. incurred community debts to fund their mutual living expenses. An equitable and just division of the community debt must account for their shared responsibility for debt accrued during marriage. Moreover, S.D. has eagerly participated in his son's upbringing. He is passionate about C.S.D.'s education and his well-being. During the final divorce hearing, S.D. offered testimony on the many ways in which C.S.D.'s interests would be served by awarding possession to S.D. or, in the alternative, extended visitation. A social study prepared in this case found him to be a good

10

parent, and did not recommend any particular custody arrangement between S.D. and F.D. Nevertheless, S.D. offered testimony questioning F.D.'s ability to care for C.S.D.'s needs. He contended F.D.'s history of neglecting C.S.D. supported granting custody to him. The trial court disregarded this testimony although it largely went unrebutted. The trial court therefore abused its discretion in awarding F.D. primary custody of the couple's minor son.

## ARGUMENT AND AUTHORITIES

### I. The trial court lacked subject matter jurisdiction to enter the Final Divorce Decree.

"Subject matter jurisdiction requires that the party bringing the suit have standing, that there be a live controversy between the parties, and that the case be justiciable." *State Bar of Texas v. Gomez*, 891 S.W.2d 243, 245 (Tex. 1994). Subject-matter jurisdiction is essential for a court to have authority to decide a case; it is never presumed and cannot be waived or conferred by consent. *See Dubai Petroleum Co. v. Kazi*, 12 S.W.3d 71, 76 (Tex. 2000); *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 443-44 (Tex. 1993) (subject-matter jurisdiction may be raised for first time on appeal); *see also Alfonso v. Skadden*, 251 S.W.3d 52, 55 (Tex. 2008) (per curiam) (subject-matter jurisdiction cannot be waived and can be raised at any time). Where a court lacks subject matter jurisdiction, its judgment is void. *Mapco, Inc. v. Forrest*, 795 S.W.2d 700, 703 (Tex. 1990). Jurisdiction is reviewed de novo.

11

**A. The parties' marital assets and liabilities were previously adjudicated, depriving the court of jurisdiction.**

S.D. raised subject-matter jurisdiction as a defect in the trial court when he moved to dismiss F.D.'s suit for lack of subject matter jurisdiction and attached a certified copy of the April 2012 Final Divorce Decree to his motion. (CR:46, CR:70). S.D. argued that the presence of a Final Decree of Divorce in Cause F-5441-08-7, *Dasque v. Dasque*, prevented the trial court from divorcing S.D. and F.D. a second time. (CR:46, CR:70). Texas law supports his position.

Upon entry of a Final Decree of Divorce, parties to a marriage no longer have a "justiciable" controversy with respect to their rights to property acquired during the marriage. This principal is consistent with cases holding that "[a] judgment finalizing a divorce and dividing marital property bars relitigation of the property division, even if the decree incorrectly characterizes or divides the property." *Pearson v. Fillingim*, 332 S.W.3d 361, 363 (Tex. 2011) (citing *Reiss v. Reiss*, 118 S.W.3d 439, 443 (Tex. 2003) and *Baxter v. Ruddle*, 794 S.W.2d 761, 762-63 (Tex. 1990)). Attempting to obtain an order that alters or modifies a divorce decree's property division is an impermissible collateral attack. *Hagen v. Hagen*, 282 S.W.3d 899, 902 (Tex. 2009). The legislature codified this principal when it enacted Section 9.007 of the Family Code:

> (a) A court may not amend, modify, alter, or change the division of property made or approved in the decree of divorce or annulment. An order to enforce the division is limited to an order to assist in the

implementation of or to clarify the prior order and may not alter or change the substantive division of property.

(b) An order under this section that amends, modifies, alters, or changes the actual, substantive division of property made or approved in a final decree of divorce or annulment is beyond the power of the divorce court and is unenforceable.

TEX. FAM. CODE ANN. § 9.007(a), (b) (West 2006). And, even assuming a party could bring a collateral attack on a Divorce Decree, the original divorce court is the one that retains jurisdiction to clarify and enforce the property division within the decree under the Family Code. TEX. FAM. CODE ANN. § 9.002, .008 (West 2006). A party may not circumvent the purposes of the statute by filing a new petition for divorce in a different court in order to secure a more favorable outcome.

In this case, a "Final Decree Hearing" on S.D. and F.D.'s divorce proceedings was held in May 2009. During the hearing, the parties read an agreement into the record with regard to possession and child support and the court approved an agreement and granted the divorce. (CR:154). That agreement was binding on the Court except as to the matters left unresolved—namely, the division of certain credit card debts. *See* TEX. FAM. CODE ANN. § 7.0006(a), (b) (agreement concerning division of property is binding on the Court if its terms are just and right).

Following the March 2010 hearing but prior to the April 2012 entry of the Final Divorce Decree, the case was dismissed for want of prosecution. To keep the

13

case alive, F.D. moved filed a verified motion in support of reinstatement. (2ⁿᵈ Supp. RR2:5-6); (App. G). The trial court orally reinstated the case in October 2010 following a hearing on F.D.'s motion and pursuant to an agreement of the parties to reinstate.  (See App. H).

S.D. and F.D. proceeded to resolve the case. (Supp. RR2:5-6). The case was transferred from Court County Court at Law No. 5 to County Court at Law No. 7.[20] Upon receiving the case, County Court at Law No. 7 issued interim orders for visitation of C.S.D. In its orders, the court "after examining the record and hearing the evidence and argument of counsel," found "all necessary prerequisites of the law have been legally satisfied and that the Court has jurisdiction of this case and of all the parties."[21]  The trial court set a final hearing on divorce which culminated in an April 20, 2012 Decree of Divorce and Modified Visitation Order.  As with its interim orders, the Decree of Divorce recites that the trial court reviewed the record and concluded that "it ha[d] jurisdiction over th[e] cause of action and the parties."[22]  F.D. agreed to the terms of the divorce decree in open court.  (RR4:23). The parties' April 20, 2012 divorce is binding and may not be re-litigated through the separate, underlying proceeding. Accordingly, the trial court lacked jurisdiction to enter the final judgment in this case.

---

[20] See App. I, Order of Transfer and Acceptance.
[21] See App. J, Interim Orders for Visitation dated December 14, 2011.
[22] See App. K, Decree of Divorce and Modified Visitation Order.

14

**B.** **The trial court similarly lacked jurisdiction to adjudicate custody and support for the couple's minor child.**

Because the Final Divorce Decree in Cause F-5441-08-7, *Dasque v. Dasque*, addressed matters affecting the parent-child relationship, the trial court further lacked jurisdiction under Section 155.001 of the Texas Family Code.

Section 155.001 of the Texas Family Code provides that a trial court "acquires continuing, exclusive jurisdiction over the matters provided for by this title in connection with a child on the rendition of a final order." Continuing jurisdiction is established where a prior court has entered a final order adjudicating matters affecting the parent child relationship. *See id.*

S.D. and F.D.'s divorce involved matters pertaining to the parent-child relationship between S.D. and F.D., on the one hand, and C.S.D., on the other hand. Their December 2008 suit for divorce culminated in a Final Decree of Divorce addressing their interaction with C.S.D. and providing for his care. (CR:48-68). S.D. received visitation with C.S.D. every other weekend between Thursday and Sunday, and he was ordered to pay $150.00 in child support plus arrears and costs for medical support. (CR:54-57). Accordingly, the suit falls within the ambit of Section 155.001 for purposes of establishing continuing and exclusive jurisdiction in County Court at Law No. 7, which entered the April 2012 Decree of Divorce. *See Fleming v. Easton*, 998 S.W.2d 252, 255 (Tex. App.— Dallas 1999, no pet.); *Jansen v. Fitzpatrick*, 14 S.W.3d 426, 430-31 (Tex. App.—

15

Houston [14th Dist.] 2000, no pet.). The court below improperly usurped that jurisdiction in attempting to adjudicate custody and support for the couple's minor child a second time in violation of the prior judgment governing his care.

## C. The reinstatement, to the extent necessary, was effective.

In response to S.D.'s Motion to Dismiss, F.D. contended the Final Divorce Decree entered in Cause F-5441-08-7 was ineffective because the trial court did not issue a written order reinstating the case after dismissing it for want of prosecution.[23] This argument glosses over circumstances in which reinstatement may be effective in the absence of a written order.

As a general principal, it is true that the Texas Supreme Court has held a written order of reinstatement is necessary to reinstate a case previously dismissed for want of prosecution. *See Emerald Oaks Hotel/Conf. Ctr., Inc. v. Zardenetta*, 776 S.W.2d 577, 578 (Tex. 1989). In the interests of promoting justice, however, Texas courts have recognized limited exceptions to this principal. For example, in *Charles L. Hardtke Inc. v. Katz*, 813 S.W.2d 548 (Tex. App.—Houston [1st Dist.] 1991, no writ.), the First Court of Appeals concluded that a docket entry and trial setting order unambiguously set aside a dismissal where the docket entry stated,

---

[23] If a plaintiff files a proper, timely, and verified motion to reinstate, a trial court must sign an order on the motion within 75 days after the date the judgment was signed, or the motion will be overruled by operation of law on the 76th day. TEX. R. CIV. P. 165a(3); *Emerald Oaks Hotel/Conference Ctr., Inc. v. Zardenetta*, 776 S.W.2d 577, 578 (Tex. 1989). Once the motion is overruled, the trial court retains plenary power to change its ruling for 30 more days. TEX. R. CIV. P. 165a(3); *Nealy v. Home Indem. Co.*, 770 S.W.2d 592, 594 (Tex. App.-Houston [14th Dist] 1989, no writ).

16

"Order of 3-11-87 struck; case removed from special dismissal docket - TRP" and the initials were those of the trial judge—and later supreme court justice, Thomas R. Phillips.

There, the trial judge ordered a joint status report to be filed by March 10, 1987. *Id.* 549. Though the parties timely submitted a status report, the court – unaware of the parties' filing – dismissed the case for want of prosecution. *Id.* at 549-50. Neither party moved for reinstatement of the case. *Id.* Nevertheless, the Court immediately attempted to reverse its dismissal order the following day by striking the dismissal order in a docket entry and later setting the case for trial. *Id.* The First Court of Appeals concluded the docket entry and trial setting, taken together, were sufficient to reinstate the case in the absence of a formal, written order. *Id.* The court distinguished *Emerald Oaks* in reaching its holding. It reasoned:

> [*Emerald Oaks'* holding] was compelled by TEX. R. CIV. P. 165a(3), which expressly required that a motion to reinstate 'shall be filed' and overruled by law after 75 days unless 'decided by a signed written order. . . .' Rule 165a(3) does not apply here because no motion to reinstate was filed. The rule requires a 'filed,' 'verified' motion that 'shall set forth the grounds therefor,' that 'shall be served' on the parties, that 'shall' be delivered by the clerk to the judge, who 'shall set a hearing . . . [and] shall notify all parties . . . of the hearing.' None of that happened here because this was not a proceeding conducted under rule 165a(3)."[24]

---

[24] The Texas Supreme Court too has acknowledged that docket entries may, in certain circumstances, evidence rulings. In *N-S-W Corp. v. Snell*, 561 S.W.2d 798, 799 (Tex. 1977, orig. proceeding) (citations omitted), the Court noted "A docket entry may supply facts in certain

17

This case fits within *Katz's* exception. Though F.D. moved to reinstate the case, the trial court agreed to reinstatement pursuant the parties' agreement at an oral hearing. The docket in this case and the trial court's oral ruling affirmatively demonstrate the court's intent the reinstate the proceedings. Upon reinstatement, both the court and the parties proceeded to litigate the case to a final disposition that balanced F.D. and S.D.'s mutual interests. That final judgment should hold sway and prevent the relitigation of F.D. and S.D.'s divorce. Both the parties and the trial court intended the April 2012 Divorce Decree to be final.

## II. The trial court erred in entering the Divorce Decree by unequally dividing the parties' community property.

In the alternative, the trial court abused its discretion in entering the Divorce Decree made the subject of this appeal. In the little evidence at trial demonstrated S.D. and F.D. incurred debt during the course of their marriage and that much of the debt related to the couple's mutual living expenses. The trial court erred in disregarding this evidence to enter a Divorce Decree placing the bulk of the credit card debt on S.D. The trial court similarly erred in awarding possession of C.S.D. to F.D. and visitation to S.D.

---

situations, but it cannot be used to contradict or prevail over a final judicial order." The Fifth Court of Appeals has similarly acknowledged that a docket entry may supply facts described in N-S-W Corp. where the docket sheet is required to correct clerical errors in judgments or orders. *Energo Int'l Corp. v. Modern Indus. Heating, Inc.*, 722 S.W.2d 149, 151 & n. 2 (Tex. App.—Dallas 1986, no writ).

18

**A.** **An award of community property must be equitable and just and cannot result from an abuse of discretion.**

In a divorce decree, the trial court "shall order a division of the estate of the parties in a manner that the court deems just and right, having due regard for the rights of each party and any children of the marriage." TEX. FAM. CODE ANN. § 7.001. Texas courts have considered the following factors when equitably dividing a community estate: (1) fault in the breakup of the marriage; (2) the benefits that the innocent spouse would have derived had the marriage continued; (3) disparity in the spouses' income or earning capacities; (4) each spouse's business opportunities; (5) differences in the spouses' education; (6) physical health and need for future support; (7) the relative ages of the parties; (8) each spouse's financial condition and obligations; (9) the size of each spouse's separate estate and any expected inheritance; (10) the nature of the spouses' property; (11) the rights of the children of the marriage; (12) waste of community assets or constructive fraud against the community; (13) gifts by one spouse to the other; and (14) tax liabilities. *See Schlueter v. Schlueter*, 975 S.W.2d 584, 589 (Tex. 1998); Barbara Anne Kazen, Division of Property at the Time of Divorce, 49 BAYLOR L. REV. 417, 424-28 (1997) (discussing factors a court may consider in making an equitable division of the community estate).

A court's division of property is reviewed for abuse of discretion. *Vallone v. Vallone*, 664 S.W.2d 455 (Tex. 1982). Under this abuse of discretion standard, the

19

legal and factual sufficiency of the evidence are not independent grounds of error, but are merely relevant factors in assessing whether the trial court abused its discretion. *Zieba v. Martin*, 928 S.W.2d 782, 786 (Tex. App.—Houston [14th Dist.] 1996, no writ).

Though a trial court does not abuse its discretion when it bases its decision on conflicting evidence or when some evidence of a probative and substantive character exists to support the division, *id.* at 787, a court of appeals may disturb the division where the record demonstrates "that the division was clearly the result of an abuse of discretion." *Id.* To determine if a trial court abused its discretion, the court analyzes the following two factors: (1) whether the trial court had sufficient information to exercise its discretion, and (2) whether the trial court abused its discretion by making a property division that is manifestly unfair and unjust. *Chacon v. Chacon*, 222 S.W.3d 909, 915 (Tex. App.—El Paso 2007, no pet.); *see also Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985); *Chavez v. Chavez*, 269 S.W.3d 763, 766 (Tex. App—Dallas 2008, no pet.).

**B.    S.D. and F.D. mutually benefitted from the credit card debt incurred during their marriage.**

S.D. opened several credit cards prior to his marriage to F.D. (RR5:25-26). S.D. paid off the balance of his credit card debt except for $1,500 on an American Airlines Citi Advantage Card prior to marrying F.D. (RR5:55). The credit cards— two of which S.D. opened during marriage—were thereafter used primarily to fund

20

community needs, such as daily living expenses. (RR5:25-26; 51-53, 55).[25] These expenses included rent, food, electricity, water, and C.S.D.'s care. (RR4:19; RR5:26).

After transferring the balances on these cards several times, S.D. paid off community debts accrued on the credit cards arising from the couple's daily living expenses with money earned from his job and his income tax return. (RR5:27, 56-58). However, additional amounts remained outstanding at the time of the divorce. (RR5:59-62). S.D. and F.D. did not testify to a specific amount of community credit card debt but disputed it was "somewhere under" $40,000.00. (RR5:61, 65).

Though the trial court correctly determined that these debts constituted community property, it erred in making a disproportionate award of the community debt. (CR189-90). F.D. and S.D. have the same or similar earning capacity as substitute teachers and make roughly the same amount. *See* Barbara Anne Kazen, Division of Property at the Time of Divorce, 49 BAYLOR L. REV. 417, 424-28 (1997) (factors most commonly used to support a disproportionate community property division are fault and disparity in income, earning capacity, business opportunities, and education). F.D. was educated as an engineer in Mexico, (RR4:21), and S.D. has plans to become a licensed nurse. (RR5:61).

---

[25] S.D. further testified he also used the cards for expenses to improve his earning ability during their marriage, such as school expenses. (RR5:57).

The court awarded F.D. $1,314.03 in community debt and ordered S.D. responsible for $18,079.79 in community debt. (*See* App. A). Yet, the parties both testified F.D. and S.D. jointly enjoyed the goods and services purchased on their credit cards during marriage. (RR5:25-26). Those costs included their daily living expenses and costs for C.S.D.'s care. (*Id.*) The record contains no exhibits at all apart from a December 2008 Bank of America statement, (RR8:PX1), to establish the amounts of these debts or that S.D. should bear such a disproportionate share of expenses that the parties agreed funded their living expenses. (See, e.g., RR5:61-65). Thus, the relevant evidence, considered in the light required for a legal-sufficiency challenge, is as follows: S.D. brought limited credit card debts to the marriage. (RR5:55). S.D. and F.D. then accrued significant credit card debts during their marriage using cards opened by S.D. (RR4:14). The cards were mostly used to fund community obligations to the tune of about $1,300 per month. (RR4:15; RR5:66-67). Those community needs included daily living expenses like food, gas, electricity and clothing. (RR4:19-20). And, though, S.D. used certain cards to pay off a vehicle, the court awarded both the vehicle and amounts outstanding on it to S.D. as separate property. (RR4:13). There is no evidence relating to the amount of community debt spent on the car as S.D.'s separate obligation.

Although the court need not divide the community estate equally, a disproportionate division must be supported by some reasonable basis. *Smith v.*

2155613.1/SPH/15555/0611/070915

*Smith*, 143 S.W.3d 206, 214 (Tex. App.—Waco 2004, no pet.). Here, in addition to the above defects, the record contains very little evidence disclosing the amount of debts the parties incurred or their origin. Thus, the court lacked sufficient information from which to make a disproportionate award of community debt. The couple mutually enjoyed the benefits of the credit cards, and should be mutually responsible for the debts accrued during the course of their marriage. In the absence of any evidence to support a disproportionate share of debts for which there is legally and factually insufficient evidence, the trial court abused its discretion.

**III. Trial court erred in awarding F.D. primary custody of C.S.D. with S.D. receiving only limited visitation with his son.**

In addition to making an unjust and disproportionate award of community debt, the court further erred in failing to order possession of C.S.D. to S.D. or, in the alternative, extended visitation between S.D. and C.S.D. The parties previously agreed to extended visitation between S.D. and C.S.D. and direct, positive testimony offered by S.D. supported S.D.'s plea for custody and/or extended visitation due to S.D.'s superior ability to care for his now pre-teen son's interests.

**A. Custody matters are reviewed for an abuse of discretion.**

Custody, visitation and possession orders are reviewed for abuse of discretion. *See, e.g., In re Doe 2*, 19 S.W.3d 278 (Tex. 2000). A trial court's

23

judgment may be reversed when it appears from the record as a whole that the trial court abused its discretion. *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990). A trial court abuses its discretion as to factual matters when it acts unreasonably or arbitrarily. *In re M.W.T.*, 12 S.W.3d 598, 602 (Tex. App.—San Antonio 2000, pet. denied) (construing *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex.1992)); *see also Worford*, 801 S.W.2d at 109. A trial court abuses its discretion as to legal matters when it fails to act without reference to any guiding principles. *In re M.W.T.*, 12 S.W.3d at 602 (construing *Walker*, 827 S.W.2d at 840). Though it is true that a trial court "is in the best situation to observe the demeanor and personalities of the witnesses and can 'feel the forces, powers, and influences that cannot be discerned by merely reading the record,'" *In re N.A.S.*, 100 S.W.3d 670, 673 (Tex. App.—Dallas 2003, no pet.), it cannot disregard unrebutted testimony that is clear, direct and positive.

## B. S.D. should have received extended visitation with C.S.D., consistent with their long-time arrangement.

In considering which party to appoint managing conservator, a court may not discriminate based on sex or marital status. *See* TEX. FAM. CODE § 153.003. Instead, it must be guided solely by the best interest of the child. *See* TEX. FAM. CODE § 153.002. This includes crediting evidence of neglect. *See* TEX. FAM. CODE § 153.004.

2155613.1/SPH/15555/0611/070915

And, to the extent a court does not award a parent possession of a minor child, but orders the terms of possession of a child under an order other than a standard possession order, *see* Texas Family Code section 153.312, the court shall further be guided by the guidelines established by the standard possession order and may consider: (1) the age, developmental status, circumstances, needs, and best interest of the child; (2) the circumstances of the managing conservator and of the parent named as a possessory conservator; and (3) any other relevant factor. *See* TEX. FAM. CODE § 153.256.

S.D. asked to be appointed sole managing conservator or, in the alternative, for extended visitation with his now pre-teen son in deviation from the standard possession order due, in part, to the parties' past child-care arrangement. (RR5:11-12). From 2009 to 2012, S.D. and F.D.'s *agreed* possession schedule allowed for S.D. to see his son every Thursday through Sunday each week. (RR5:15-16). The possession schedule worked well for C.S.D., RR5:15-16, but was later modified on F.D.'s motion as part of the parties' first divorce proceeding. S.D. sought a return to the agreed arrangement so that he could have an increased role in C.S.D.'s upbringing. (RR5:28-30, RR6:6-8). C.S.D. is approaching his teenage years, and those years play a critical role in development that are best served by promoting C.S.D.'s relationship with his father. *Cf.* TEX. FAM. CODE § 153.256.

2155613.1/SPH/15555/0611/070915

In support of his request for custody and extended visitation, S.D. testified C.S.D. was well-cared for at S.D.'s home where he had his own bedroom and space. (RR5:17-18). During their time together, S.D. assisted his son with his homework, fed him and addressed his needs without issue. (*Id.*) S.D. testified he took proactive steps to improve C.S.D.'s education by enrolling him in tutoring sessions, helping with his homework and attending school meetings. (RR5:29-30, 34-35). Further, S.D. took C.S.D. to doctor's appointments and ensured his health was looked after. (RR5:36).

Conversely, S.D. testified to a series of concerns about C.S.D.'s time with his mother. (RR5:20-24, 35-37). Among them:

- C.S.D. stayed up late at his mother's house during school nights such that he fell asleep during school hours. (RR5:21).

- F.D. left her son in the car while grocery shopping. (RR5:21-22).

- F.D. was unable to assist C.S.D. with his homework due to a language barrier. (RR5:29).

- F.D. sent C.S.D. to school without the appropriate seasonal attire. (RR5:30).

- F.D. allowed C.S.D. to play violent video games. (RR5:31-32).

- F.D. did not well-arrange for after school care for C.S.D. but generally left him home alone and unattended. (RR5:37, 39-40).

2155613.1/SPH/15555/0611/070915

- F.D. allowed C.S.D. to cross the street without supervision on his way home from school and to wander around parking lots. (RR5:39).

S.D. reported some of his concerns to child protective services after he discovered F.D. allowed C.S.D. to cross streets without supervision and found bruising on him. (RR5:37, 39-40). All of these facts, taken together, constitute significant evidence that extended visitation between S.D. and C.S.D. (or primary custody) served the child's best interests. The trial court erred in wholly disregarding these facts to schedule more limited visitation between S.D. and C.S.D.

A social study prepared in connection with the case provides additional, compelling evidence regarding the care of C.S.D. After interviewing C.S.D. and both his parents, the social study concluded that both S.D. and F.D. are good parents to their son. (RR5:6-7). Nothing in the report concluded S.D. should have limited access to his son or culminated in a finding that would call for reduced visitation between C.S.D. and S.D. (RR5:7, 27-28).

And, F.D.'s countervailing testimony regarding C.S.D.'s best interests was often based on speculation or otherwise failed to contradict S.D.'s testimony. When asked if she knew if S.D. instructed C.S.D. in his homework, fed C.S.D. or otherwise appropriately cared for him during the times of visitation, F.D. testified, "Well, he's with him. I don't know what they do together." (RR5:9). And, when questioned on whether she objected to extended visitation based solely on her

27

contention that it would require C.S.D. to adapt to a new visitation schedule, F.D. responded as follows:

> Q: So it's your testimony that your son cannot adapt so long as it's more visitation with my client?
>
> A: I'm not saying that, but what does it have anything to do with one day before or one day after?
>
> Q: Okay. Would you agree to allow your child to spend time with Serge every Thursday and the first, third and fifth Friday through Monday like we talked about?
>
> A: Each Thursday? I don't know.

(RR5:13). This testimony is insufficient to contradict S.D.'s testimony that extended visitation with C.S.D. served his son's best interests. As a result, the only credible testimony offered in the trial court supported awarding S.D. extended visitation in accord with the parties' previous, agreed possession schedule. The trial court erred in failing order possession in accord with this testimony or custody.

## CONCLUSION AND PRAYER

For these reasons, Serge Dasque respectfully requests that the Court vacate the trial court's Divorce Decree or, in the alternative, reverse the Final Divorce Decree with respect to its division of community debt and visitation rights and remand for further proceedings.

28

Respectfully submitted,

**STRASBURGER & PRICE L.L.P.**

By:   */s/ Kelly H. Leonard*
      Kelly H. Leonard
      State Bar No. 24078703
      kelly.leonard@strasburger.com
      909 Fannin Street, Suite 2300
      Houston, Texas  77056
      (713) 951-5619 (Tel)
      (713) 960-5660 (Fax)

      *Counsel for Serge Dasque*

29

## CERTIFICATE OF COMPLIANCE

In accordance with TEX. R. APP. P. 9.4(b)-(e) and Local Rule 3(e), the undersigned counsel certifies that this document was generated with a computer using MS Word and contains 7,018 words. Further, this document was prepared using Times New Roman 14-point font, except for its footnotes which are no smaller than Times New Roman 12-point font. The undersigned will provide the Court with one paper copy of this filing in accord with Local Rule 3(g) within one business day.

*/s/ Kelly H. Leonard*
Kelly H. Leonard

## CERTIFICATE OF SERVICE

I hereby certify that I have complied with the Texas Rules of Appellate Procedure and the Local Rules of this Court and that the foregoing Amended Appellant's Brief has been electronically filed and served on all counsel of record in accordance with these Rules on this the 10th day of July, 2015.

*/s/ Kelly H. Leonard*
Kelly H. Leonard

2155613.1/SPH/15555/0611/070915

No. 13-13-00645-CV

---

**IN THE THIRTEENTH COURT OF APPEALS
AT CORPUS CHRISTI-EDINBURG, TEXAS**

---

SERGE DASQUE
*Appellant,*

v.

FABIOLA AIDEE DASQUE
*Appellee.*

---

**APPENDIX**

---

| TAB | DOCUMENT |
| --- | --- |
| Tab A | Final Divorce Decree |
| Tab B | Original Petition for Divorce in Cause F-5441-08-5 |
| Tab C | Counter Petition for Divorce in Cause F-5441-08-5 |
| Tab D | May 7, 2009 Final Divorce Hearing Transcript |
| Tab E | March 12, 2010 DWOP Notice |
| Tab F | August 11, 2010 Order of Dismissal in Cause F-5441-08-5 |
| Tab G | Respondent's Verified Motion to Reinstate filed September 10, 2010 |
| Tab H | Reinstatement Hearing Transcript |
| Tab I | Order of Transfer and Acceptance. |
| Tab J | Interim Orders for Visitation dated December 14, 2011 |
| Tab K | Decree of Divorce and Modified Visitation Order |

# APPX. A

NO. F-1947-12-2



| IN THE MATTER OF | § | IN THE COUNTY COURT |
| THE MARRIAGE OF | § | |
| | § | |
| FABIOLA AIDEE DASQUE | § | |
| AND | § | AT LAW NO. 2 |
| SERGE DASQUE | § | |
| | § | |
| AND IN THE INTEREST OF | § | |
| C███████ S███████ D█████, | § | |
| MINOR CHILD | § | HIDALGO COUNTY, TEXAS |
| | § | |

## DECREE OF DIVORCE

On June 20, 2013, July 25, 2013 and August 12, 2013 this case came to be heard for hearing.

*Appearances*

Petitioner, Fabiola Aidee Dasque, appeared in person and through attorney of record, Amber VanSchuyver, and announced ready for trial.

Respondent, Serge Dasque, appeared in person and through attorney of record, Brandon Holubar, and announced ready for trial.

*Record*

The record of testimony was duly reported by the official court reporter for this court.

*Jurisdiction & Domicile*

The Court finds that the pleadings in this case are in due form and contain all the allegations, information, and prerequisites required by law. The Court, after receiving evidence, finds that it has jurisdiction over this cause of action and the parties and that at least 60 days have elapsed since the date the suit was filed. The Court finds that Petitioner has been a domiciliary of this state for at least a six-month period preceding the filing of this action and a resident of this county for at least a 90-day period preceding the filing of this action. All persons entitled to citation were properly cited.

*Jury*

A jury was waived, and all questions of fact and of law were submitted to the Court.

**168**

*Divorce*

The Court finds that the material allegations in Petitioner's divorce petition are substantially correct and have been proven by full and satisfactory evidence.

IT IS ORDERED AND DECREED that Serge Dasque and Fabiola Aidee Dasque, are divorced and that the marriage between them is dissolved.

## CHILD OF THE MARRIAGE

The Court finds that Petitioner and Respondent are the parents of the following child, now under the age of eighteen (18) years, who is not under the continuing, exclusive jurisdiction of any other court:

NAME: C███████ S███████ D██████
SEX: MALE
BIRTHPLACE: MADERO, TAMAULIPAS
BIRTHDATE: 10/█/2001
SOCIAL SECURITY NO.: XXX-XX-X

The Court finds no other children of the marriage are expected.

The Court, having considered the circumstances of the parents and the child, finds the following orders are in the best interest of the child:

IT IS ORDERED AND DECREED that Fabiola Aidee Dasque and Serge Dasque are appointed Joint Managing Conservators of the child.

## RIGHTS AND DUTIES OF JOINT MANAGING CONSERVATORS

IT IS ORDERED AND DECREED that both Joint Managing Conservators shall each retain the right to receive information from the other concerning the health, education, and welfare of the child and, to the extent possible, the right to confer with the other before making a decision concerning the health, education, and welfare of the child. IT IS ORDERED AND DECREED that both Joint Managing Conservators have a duty to inform the other parent in a timely manner of significant information concerning the health, education, and welfare of the child.

IT IS ORDERED AND DECREED that each parent shall have the duty to inform the other parent if the parent resides with for at least 30 days, marries, or intends to marry a person who the parent knows: 1) is registered as a sex offender under Chapter 62, Code of Criminal Procedure; or 2) is

169

currently charged with an offense for which on conviction the person would be required to register under that chapter. This notice shall be made as soon as practicable but not later than the 40th day after the date the parent begins to reside with the person or the 10th day after the date the marriage occurs, as appropriate. The notice must include a description of the offense that is the basis of the person's requirement to register as a sex offender or of the offense with which the person is charged.

IT IS ORDERED AND DECREED that at all times both Joint Managing Conservators shall retain the following rights:

(1)     to have access to medical, dental, psychological, and educational records of the child;

(2)     to consult with any physician, dentist, or psychologist of the child;

(3)     to consult with school officials concerning the child's welfare and educational status, including school activities;

(4)     to attend school activities;

(5)     to be designated on any records as a person to be notified in case of an emergency; and

(6)     to manage the estate of the child to the extent the estate has been created by the parent or the parent's family.

IT IS ORDERED AND DECREED that, during their respective periods of possession, the Joint Managing Conservator in possession shall have the following rights, duties, and powers:

(1)     the duty of care, control, protection, and reasonable discipline of the child;

(2)     the duty to support the child, including providing the child with clothing, food, shelter, and medical and dental care not involving an invasive procedure;

(3)     the right to consent for the child to medical and dental care not involving an invasive procedure;

(4)     the right to consent for the child to medical, dental, and surgical treatment during an emergency involving immediate danger to the health and safety of the child; and

(5)     the right to direct the moral and religious training of the child.

IT IS ORDERED AND DECREED that Fabiola Aidee Dasque shall have the following rights, duties, and powers:

(1)     the exclusive right to establish child's primary residence ~~without regard to the~~ within Hidalgo County, Texas

geographic location;

(2) the independent right to consent to medical, dental, and surgical treatment involving invasive procedures, and to psychiatric and psychological treatment;

(4) the exclusive right to receive and give receipt for periodic payments for the support of the child and to hold or disburse these funds for the benefit of the child;

(5) the independent right to represent the child in legal action and to make other decisions of substantial legal significance concerning the child;

(6) the independent right to consent to marriage and to enlistment in the armed forces of the United States;

(7) the independent right to the services and earnings of the child;

(8) except when a guardian of the child's estate or a guardian or attorney ad litem has been appointed for the child, the independent right to act as an agent of the child to act in relation to the child's estate if the child's action is required by a state, the United States, or a foreign government;

(9) the independent right to make educational decisions on behalf of the child; and

(10) the independent right to manage the estate of the child to the extent the estate has been created by community property or the joint property of the parents.

IT IS ORDERED AND DECREED that Serge Dasque shall have the following rights, duties, and powers:

(1) the independent right to consent to medical, dental, and surgical treatment involving invasive procedures, and to psychiatric and psychological treatment;

(2) the independent right to consent to psychiatric and psychological treatment of the child;

(3) the independent right to make decisions concerning the child's education;

(2) the independent right to represent the child in legal action and to make other decisions of substantial legal significance concerning the child;

(3) the independent right to consent to marriage and to enlistment in the armed forces of the United States;

(4) the independent right to the services and earnings of the child;

(5) except when a guardian of the child's estate or a guardian or attorney ad litem has been appointed for the child, the independent right to act as an agent of the child to act in

**171**

relation to the child's estate if the child's action is required by a state, the United States, or a foreign government; and

(6)     the independent right to manage the estate of the child to the extent the estate has been created by community property or the joint property of the parents.

## VISITATION RIGHTS

The Court finds that the following provisions of this Possession Order are in the best interest of the child and the Court finds that good cause exists to deviate from the Standard Possession Order contained in the Texas Family Code at sections 153.311 through 153.317, as the Standard Possession Order is unworkable or inappropriate under the circumstances. IT IS THEREFORE ORDERED as follows:

(a) Definitions

1.      In this Possession Order "school" means the primary or secondary school in which the child is enrolled or, if the child is not enrolled in a primary or secondary school, the public school district in which the child primarily resides.
2.      In this Possession Order "child" includes each child, whether one or more, who is subject of this suit while that child is under the age of eighteen years and not otherwise emancipated.

(b) Mutual Agreement or Specified Terms for Possession

IT IS ORDERED that the conservators shall have possession of the child at times mutually agreed to in advance by the parties, and, in the absence of mutual agreement, it is ORDERED that the conservators shall have possession of the child under the specified terms set out in this Possession Order.

*Possession by Serge Dasque*

PHASE ONE:

IT IS ORDERED that "Phase One" of this Possession Order is effective immediately and shall stay in effect until "Phase Two" of this Possession Order becomes effective pursuant to the provisions below. Except as otherwise explicitly provided in this Possession Order, Serge Dasque shall have the right to possession of the child under "Phase One" of this Possession Order as follows:

(a) Weekend Possession

Except as otherwise explicitly provided, Serge Dasque shall have the right to possession of the child every other weekend, beginning at the time the child is dismissed from school on Thursday beginning August 15, 2013 and ending at 6 p.m. on the following Sunday.

Weekend Possession Extended By Holiday.  Except as otherwise explicitly provided, if a weekend period of possession of Serge Dasque coincides with a school holiday during the regular school term, or with a federal, state, or local holiday during the summer months in which school is not in session, the weekend possession shall end at 6 p.m. on a Monday holiday or school holiday or shall begin at 6 p.m. Thursday for a Friday holiday or school holiday, as applicable.

(b) Vacations and Holidays.

The following provisions govern possession of the child for vacations and for certain specific holidays and supersede any conflicting weekend periods of possession provided above.

Christmas Vacation.  Serge Dasque and Fabiola Aidee Dasque shall have rights of possession of the child as follows:

(1)     Serge Dasque shall have possession of the child in even-numbered years beginning at 6 p.m. on the day the child is dismissed from school for the Christmas school vacation and ending at noon on December 26th, and Fabiola Aidee Dasque shall have possession for the same period in odd-numbered years;

(2)     Serge Dasque shall have possession of the child in odd-numbered years beginning at noon on December 26th and ending at 6 p.m. on the day before school resumes after that vacation, and Fabiola Aidee Dasque shall have possession for the same period in even-numbered years.

Thanksgiving.  Serge Dasque shall have possession of the child in odd-numbered years beginning at 6 p.m. on the day the child is dismissed from school before Thanksgiving and ending at 6 p.m. on the following Sunday, and Fabiola Aidee Dasque shall have possession for the same period in even-numbered years.

School Spring Break.  Serge Dasque shall have possession of the child in even-numbered years beginning at 6 p.m. on the day the child school is dismissed for the school's spring vacation and ending at 6 p.m. on the day before school resumes after that vacation, and Fabiola Aidee Dasque shall have possession for the same period in odd-numbered years.

Summer Vacation.  If Serge Dasque gives Fabiola Aidee Dasque written notice by April 1 of each year specifying an extended period or periods of summer possession, Serge Dasque shall have possession of the child for 30 days beginning no earlier than the day after the child's school is dismissed for the summer vacation and ending no later than seven days prior to school resuming at the end of the summer vacation, to be exercised in no more than two separate periods of at least seven consecutive days each; or if Serge Dasque does not give Fabiola Aidee Dasque written notice by April 1 of each year specifying an extended period or periods of summer possession, Serge Dasque shall have possession of the child for 30 consecutive days beginning at 6 p.m. on July 1 and ending at 6 p.m. on July 31. Serge Dasque is ordered to enroll the child in some form of extracurricular activity during his extended summer visitation.

If Fabiola Aidee Dasque gives Serge Dasque written notice by April 15 of each year, Fabiola Aidee Dasque shall have possession of the child on any one weekend beginning Friday at 6 p.m. and

ending at 6 p.m. on the following Sunday during any one period of possession elected by Serge Dasque under the preceding paragraph, provided that Fabiola Aidee Dasque picks up the child from Serge Dasque and returns the child to that same place.

If Fabiola Aidee Dasque gives Serge Dasque written notice by April 15 of or gives Serge Dasque 14 days' written notice on or after April 16 of each year Fabiola Aidee Dasque may designate one weekend beginning no earlier than the day after the child's school is dismissed for the summer vacation and ending no later than seven days prior to school resuming at the end of the summer vacation, during which an otherwise scheduled weekend period of possession by Serge Dasque will not take place, provided that the weekend so designated does not interfere with Serge Dasque's period or periods of extended summer possession or with Father's Day if Serge Dasque is the father of the child.

Child's Birthday. The parent not otherwise entitled under this standard order to present possession of a child on the child's birthday shall have possession of the child beginning at 6 p.m. and ending at 8 p.m. on that day, provided that said parent picks up the child from the residence of the conservator entitled to possession and returns the child to that same place.

. Father's Day. The father shall have possession of the child beginning at 6:00 p.m. on the Friday preceding Father's Day and ending on Father's day at 6 p.m., provided that, if he is not otherwise entitled under this standard order to present possession of the child, he picks up the child from the residence of the conservator entitled to possession and returns the child to that same place.

Mother's Day. The mother shall have possession of the child beginning at 6:00 p.m. on the Friday preceding Mother's Day and ending on Mother's day at 6 p.m., provided that, if she is not otherwise entitled under this standard order to present possession of the child, she picks up the child from the residence of the conservator entitled to possession and returns the child to that same place.

PHASE TWO:
IT IS ORDERED that "Phase Two" of this Possession Order is effective on November 1, 2013.

Except as otherwise explicitly provided in this Possession Order, Serge Dasque shall have the right to possession of the child under "Phase Two" of this Possession Order as follows:

(a) Weekend Possession

Weekend Visitation. Except as otherwise explicitly provided, Serge Dasque shall have the right to possession of the child on weekends beginning at the time the child's school is regularly dismissed on the first, third, and fifth Friday of each month and ending at the time the child's school resumes on the following Monday.

Weekend Possession Extended By Holiday. Except as otherwise explicitly provided, if a weekend period of possession of Serge Dasque coincides with a school holiday during the regular school term, or with a federal, state, or local holiday during the summer months in which school is not in session, the weekend possession shall end at 6 p.m. on a Monday holiday or school holiday or shall begin at 6 p.m. Thursday for a Friday holiday or school holiday, as applicable.

Thursday Visitation During School Term. Serge Dasque shall have rights of possession of the
174

child on Thursdays of each week during the regular school term, beginning at the time the child's school is regularly dismissed and ending at at the time the child's school resumes on the following Friday.

(b) Holiday Possession

The following provisions govern possession of the child for vacations and for certain specific holidays and supersede any conflicting weekend periods of possession provided above.

Christmas Vacation. Serge Dasque and Fabiola Aidee Dasque shall have rights of possession of the child as follows:

(1)     Serge Dasque shall have possession of the child in even-numbered years beginning at 6 p.m. on the day the child is dismissed from school for the Christmas school vacation and ending at noon on December 26th, and Fabiola Aidee Dasque shall have possession for the same period in odd-numbered years;

(2)     Serge Dasque shall have possession of the child in odd-numbered years beginning at noon on December 26th and ending at 6 p.m. on the day before school resumes after that vacation, and Fabiola Aidee Dasque shall have possession for the same period in even-numbered years.

Thanksgiving. Serge Dasque shall have possession of the child in odd-numbered years beginning at 6 p.m. on the day the child is dismissed from school before Thanksgiving and ending at 6 p.m. on the following Sunday, and Fabiola Aidee Dasque shall have possession for the same period in even-numbered years.

School Spring Break. Serge Dasque shall have possession of the child in even-numbered years beginning at 6 p.m. on the day the child school is dismissed for the school's spring vacation and ending at 6 p.m. on the day before school resumes after that vacation, and Fabiola Aidee Dasque shall have possession for the same period in odd-numbered years.

Summer Vacation. If Serge Dasque gives Fabiola Aidee Dasque written notice by April 1 of each year specifying an extended period or periods of summer possession, Serge Dasque shall have possession of the child for 30 days beginning no earlier than the day after the child's school is dismissed for the summer vacation and ending no later than seven days prior to school resuming at the end of the summer vacation, to be exercised in no more than two separate periods of at least seven consecutive days each; or if Serge Dasque does not give Fabiola Aidee Dasque written notice by April 1 of each year specifying an extended period or periods of summer possession, Serge Dasque shall have possession of the child for 30 consecutive days beginning at 6 p.m. on July 1 and ending at 6 p.m. on July 31. Serge Dasque is ordered to enroll the child in some form of extracurricular activity during his extended summer visitation.

If Fabiola Aidee Dasque gives Serge Dasque written notice by April 15 of each year, Fabiola Aidee Dasque shall have possession of the child on any one weekend beginning Friday at 6 p.m. and ending at 6 p.m. on the following Sunday during any one period of possession elected by Serge Dasque under the preceding paragraph, provided that Fabiola Aidee Dasque picks up the child from

Serge Dàsque and returns the child to that same place.

If Fabiola Aidee Dasque gives Serge Dasque written notice by April 15 of or gives Serge Dasque 14 days' written notice on or after April 16 of each year Fabiola Aidee Dasque may designate one weekend beginning no earlier than the day after the child's school is dismissed for the summer vacation and ending no later than seven days prior to school resuming at the end of the summer vacation, during which an otherwise scheduled weekend period of possession by Serge Dasque will not take place, provided that the weekend so designated does not interfere with Serge Dasque's period or periods of extended summer possession or with Father's Day if Serge Dasque is the father of the child.

Child's Birthday. The parent not otherwise entitled under this standard order to present possession of a child on the child's birthday shall have possession of the child beginning at 6 p.m. and ending at 8 p.m. on that day, provided that said parent picks up the child from the residence of the conservator entitled to possession and returns the child to that same place.

Father's Day. The father shall have possession of the child beginning at 6:00 p.m. on the Friday preceding Father's Day and ending on Father's day at 6 p.m., provided that, if he is not otherwise entitled under this standard order to present possession of the child, he picks up the child from the residence of the conservator entitled to possession and returns the child to that same place.

Mother's Day. The mother shall have possession of the child beginning at 6:00 p.m. on the Friday preceding Mother's Day and ending on Mother's day at 6 p.m., provided that, if she is not otherwise entitled under this standard order to present possession of the child, she picks up the child from the residence of the conservator entitled to possession and returns the child to that same place.

(c) Undesignated Periods of Possession

Fabiola Dasque shall have the right of possession of the child at all other times not specifically designated in this Possession Order for Serge Dasque.

(d) General Terms and Conditions

Except as otherwise explicitly provided, terms and conditions of possession of a children are as follows:

(1)     Fabiola Dasque shall surrender the children to the Serge Dasque at the beginning of each period of the Serge Dasque's possession at the residence of Fabiola Dasque;

(2)     Serge Dasque shall return the children to Fabiola Dasque at the residence of Fabiola Dasque at the end of each period of possession;

(3)     each conservator shall return with the children the personal effects that the children brought at the beginning of the period of possession;

(4)     either parent may designate any competent adult to pick up and return the children, as applicable; a parent or a designated competent adult shall be present when the children are picked up or returned;

176

(5)     a parent shall give notice to the person in possession of the children on each occasion that the parent will be unable to exercise that parent's right of possession for any specified period; repeated failure of a parent to give notice of an inability to exercise possessory rights may be considered as a factor in a modification of those possessory rights;

(6)     written notice shall be deemed to have been timely made if received or postmarked before or at the time that notice is due; and,

(7)     if a conservator's time of possession of the children ends at the time school resumes and for any reason the children are not or will not be returned to school, the conservator in possession of the children shall immediately notify the school and the other conservator that the children will not be returned to school on time.

**This concludes the Possession Order.**

The possession and access ordered above applies to the child the subject of this suit while the child is under the age of 18 years and not otherwise emancipated.

## CHILD SUPPORT

It is FOUND that *SERGE DASQUE*, the *father* of the child, has a duty of support.

## TEMPORARY ORDERS

The COURT FINDS that parties' are discharged from any obligations imposed by the temporary orders issued by this court.

## FINDINGS REGARDING MEDICAL SUPPORT AND CHILD SUPPORT OBLIGATIONS

It is FOUND:
*SERGE DASQUE's* gross monthly resources are $1,915.66.
Reasonable cost, based upon 9% of *SERGE DASQUE's* gross monthly resources is $172.00.
*SERGE DASQUE* is obligated to provide support for the following:

(A)     The number of children before the court is one (1).
(B)     The number of minor children not before the court residing in the same household with *SERGE DASQUE* is zero (0).
(C)     The number of children not before the court for whom *SERGE DASQUE* is obligated by a court order to provide **medical support**, and who are not counted under Paragraph (A) or (B) is zero (0).

177

(D)    The number of children not before the court for whom *SERGE DASQUE* is obligated by a court order to provide **child support**, including those counted in (C) above, and who are not counted under Paragraph (A) or (B) is zero (0).

*FABIOLA AIDEE DASQUE* provides health insurance coverage for zero (0) other minor children.

## MEDICAL SUPPORT

(MORE THAN ONE OPTION MAY BE APPROPRIATE)

☐   1.   Health insurance is available or is in effect for the child through the following parent's employment or membership in a union, trade association, or other organization at a reasonable cost to *SERGE DASQUE*:

☐ *FABIOLA AIDEE DASQUE* at an actual cost of $ _____ per month.
☐ *SERGE DASQUE* at an actual cost of $ _____ per month.

☐   2.   Health insurance is not available under option #1, or good cause exists to vary from #1, and health insurance is available to the following parent from another source at a reasonable cost to *SERGE DASQUE*:

☐ *FABIOLA AIDEE DASQUE* at an actual cost of $ _____ per month.
☐ *SERGE DASQUE* at an actual cost of $ _____ per month.

[x]   3.   No parent has access to private health insurance at a reasonable cost or good cause exists to vary from #1 or #2.

☐   4.   Notwithstanding the findings made above, it is FOUND that good cause exists to deviate from the statutory priorities in ordering health insurance for the following reason(s):

_____

_____

_____

_____

_____

It is further FOUND that the following orders regarding health insurance are in the best interest of the child.

## CHILD SUPPORT FINDINGS

It is FOUND:

(1)    the net resources of *SERGE DASQUE* per month are $1,557.96

(2)    the percentage applied to *SERGE DASQUE's* net resources for child support is 20%.

## GOVERNMENT MEDICAL ASSISTANCE PROGRAM OR HEALTH PLAN

*FABIOLA AIDEE DASQUE* is ORDERED to apply, within 15 days after entry of this order, on

behalf of the child for participation in a government medical assistance program or health plan.

Upon enrollment, *FABIOLA AIDEE DASQUE* is ORDERED to maintain such health coverage in full force and effect for any child, subject of this suit, by paying any and all applicable fees required for the coverage, including but not limited to, enrollment fees, and premiums until the first of the following events occurs for the child:

1.	the child reaches the age of eighteen years or graduates from high school, whichever occurs later, subject to the provisions for support beyond the age of eighteen years set out below;

2.	the child marries;

3.	the child dies;

4.	the child enlists in the armed forces of the United States and begins active service as defined by section 101 of title 10 of the United States Code; or

5.	the child's disabilities are otherwise removed for general purposes.

If the child is eighteen years of age and has not graduated from high school, IT IS ORDERED that this obligation shall not terminate but shall continue for as long as the child is enrolled

1.	under chapter 25 of the Texas Education Code in an accredited secondary school in a program leading toward a high school diploma or under section 130.008 of the Education Code in courses for joint high school and junior college credit and is complying with the minimum attendance requirements of subchapter C of chapter 25 of the Education Code or

2.	on a full-time basis in a private secondary school in a program leading toward a high school diploma and is complying with the minimum attendance requirements imposed by that school.

*FABIOLA AIDEE DASQUE* is ORDERED to furnish *SERGE DASQUE* and the Office of the Attorney General Child Support Division, a true and correct copy of the health insurance policy or certification and a schedule of benefits within 30 days following the signing of this order.

*FABIOLA AIDEE DASQUE* is ORDERED to furnish *SERGE DASQUE* the insurance cards and any other forms necessary for use of the insurance within 30 days following the signing of this order.

*FABIOLA AIDEE DASQUE* is ORDERED to provide, within three days of receipt by her, to *SERGE DASQUE* any insurance checks, other payments, and/or explanations of benefits relating to any medical expenses for the child that *SERGE DASQUE* incurred or paid.

**CASH MEDICAL SUPPORT**

Pursuant to Texas Family Code §154.182(b)(3), *SERGE DASQUE* is ORDERED to pay *FABIOLA AIDEE DASQUE* cash medical support, as additional child support, of **$86.00** each month, beginning the 1st day of **September, 2013**, payable on or before the same day of each month thereafter until the earliest occurrence of one of the events specified below happens for every child, subject of this suit:

1.      the child reaches the age of eighteen years or graduates from high school, whichever occurs later, subject to the provisions for support beyond the age of eighteen years set out below;

2.      the child marries;

3.      the child dies;

4.      the child enlists in the armed forces of the United States and begins active service as defined by section 101 of title 10 of the United States Code; or

5.      the child's disabilities are otherwise removed for general purposes.

If the child is eighteen years of age and has not graduated from high school, IT IS ORDERED that the obligation to pay medical support for that child shall not terminate but shall continue for as long as the child is enrolled

1.      under chapter 25 of the Texas Education Code in an accredited secondary school in a program leading toward a high school diploma or under section 130.008 of the Education Code in courses for joint high school and junior college credit and is complying with the minimum attendance requirements of subchapter C of chapter 25 of the Education Code or

2.      on a full-time basis in a private secondary school in a program leading toward a high school diploma and is complying with the minimum attendance requirements imposed by that school.

*SERGE DASQUE* is allowed to discontinue payment of cash medical support, for the period of time *SERGE DASQUE* is providing coverage if:

(1) health insurance for the children becomes available to *SERGE DASQUE* at a reasonable cost; and

(2) *SERGE DASQUE* enrolls the child in the insurance plan; and

(3) *SERGE DASQUE* provides *FABIOLA AIDEE DASQUE* and the Title IV-D agency the information required under Texas Family Code §154.185.

## NO CREDIT FOR INFORMAL PAYMENTS

180

*SERGE DASQUE* is ORDERED to pay all cash medical support, if ordered, through the registry prescribed in this decree, and any direct payments or any expenditure incurred during periods of possession shall be deemed in addition to and not in lieu of the medical support ordered herein.

## ADDITIONAL HEALTH CARE EXPENSES

Pursuant to Texas Family Code §154.183(c), additional healthcare expenses to be allocated between the parties include the following:

(1) any reasonable and necessary health care expenses of the child, including vision and dental expenses, that are not reimbursed by insurance; and

(2) any amounts paid by either party as deductibles or copayments for health care services for the child.

Additional health care expenses of the child are allocated as follows:

*FABIOLA AIDEE DASQUE* is ORDERED to pay _50_ % and *SERGE DASQUE* is ORDERED to pay _50_% of the total health care expenses that exceed the amount of cash medical support ordered.

If the cash medical support is discontinued pursuant to the **"CASH MEDICAL SUPPORT"** provision because *SERGE DASQUE* obtains health insurance for the child, *SERGE DASQUE* shall be responsible for 100% of the child's total health care expenses incurred in any month in which he neither pays the cash medical support nor provides health care coverage for the child.

The party who incurs a health care expense on behalf of the child is ORDERED to submit to the non- incurring party(ies) all forms, receipts, bills, and statements reflecting the health care expenses within 30 days after he or she receives them. The party shall itemize those expenses for which payment or reimbursement is sought. Each non-incurring party who is also a parent is ORDERED to pay his or her share or percentage of the health care expenses either by paying the health care provider directly or by reimbursing the incurring party within 30 days after the non-incurring party receives the forms, receipts, bills, or statements.

## WARNING

**A parent ordered to provide health insurance, or to pay additional child support for the cost of health insurance who fails to do so is liable for 100% of necessary medical expenses of the child, without regard to whether the expenses would have been paid if health insurance had**

181

been provided, and the cost of health insurance premiums or contributions, if any, paid on behalf of the child.

## CURRENT CHILD SUPPORT

*SERGE DASQUE* is ORDERED to pay *FABIOLA AIDEE DASQUE* current child support of $312.00 each month beginning the 1st day of **September, 2013** payable on or before that date and on or before the same day of each month thereafter until the child for whom child support is ordered attains the age of 18 or, pursuant to Chapter 154 Texas Family Code, if the child is fully enrolled and complying with attendance requirements in a secondary school program leading toward a high school diploma or enrolled in courses for joint high school and junior college credit, graduates from high school, whichever occurs last or the child support obligation otherwise terminates as defined below.

## TERMINATION OF CHILD SUPPORT

A child support obligation terminates on:

1. the marriage of the child;

2. the removal of the child's disabilities for general purposes;

3. the death of the child;

4. the date on which the child begins active service in the armed forces, as defined by 10 U.S.C. Section 101.

## NO CREDIT FOR INFORMAL PAYMENTS

*SERGE DASQUE* is ORDERED to pay all child support through the registry prescribed in this decree, and any direct payments by him or any expenditure incurred during his periods of possession shall be deemed in addition to and not in lieu of the child support ordered herein.

## RETROACTIVE CHILD SUPPORT as to SERGE DASQUE

It is FOUND that retroactive child support should be ordered ~~for the period between May 10, 2012~~ as of and August 12, 2013 in the amount of ~~$3,616.00~~ $11,557.00 as of August 12, 2013, and that the retroactive child support is assigned to the Attorney General pursuant to Texas Family Code Chapter 231. A judgment is granted against *SERGE DASQUE* and in favor of the Attorney General in the amount of ~~$3,616.00~~ $11,557.00, with interest as provided by the law of the State of Texas, at the rate of 6% per annum for collection and distribution according to law.

*SERGE DASQUE*, the Obligor, is Ordered to pay said child support judgment by paying $70.00 each month beginning the 1st day of **September, 2013** on or before that date and on or before the

same date of each month thereafter until the arrearage is paid in full, or on the termination of current support for any child the subject of this suit.

If *SERGE DASQUE* has not paid the judgment in full by the date his current child support obligation ends, *SERGE DASQUE* is ORDERED to pay the remainder of said judgment by paying **$382.00** each month on or before the same day of each month until the arrearage is paid in full. The withholding order authorized herein shall include such payments, but nothing herein shall prohibit the use of other collection methods authorized by law. The court's order setting payments on a child support judgment or on a medical support judgment does not preclude or limit the use of any other means for enforcement of the judgment.

### RETROACTIVE MEDICAL SUPPORT as to SERGE DASQUE

It is Found that retroactive medical support should be ordered for the period between May 10, 2012 and August 12, 2013 in the amount of **$0.00**, as of **August 12, 2013**, and that the retroactive medical support is assigned to the Attorney General pursuant to Texas Family Code Chapter 231. JUDGMENT is granted against *SERGE DASQUE* and in favor of the Attorney General in the amount of **$0.00**, with interest as provided by the law of the State of Texas, at the rate of 6% per annum for collection and distribution according to law.

### INCOME WITHHOLDING

Pursuant to Texas Family Code Chapter 158, any employer of *SERGE DASQUE*, current or subsequent, is ORDERED to withhold income from the disposable earnings of *SERGE DASQUE* for the child's support as set out in the ORDER/NOTICE TO WITHHOLD INCOME FOR CHILD SUPPORT. Any income withheld from *SERGE DASQUE*'s disposable earnings for child support and paid according to this order shall be credited against his child support obligation, but shall not discharge any of his child support obligation that exceeds the amount so credited.

It is FOUND *SERGE DASQUE* is liable for all court ordered child support, regardless of the amounts withheld by any employer or entity, and *SERGE DASQUE* is ORDERED to pay any court ordered child support not withheld by any employer or entity directly to the Texas Child Support Disbursement Unit as ordered.

The Clerk of the Court is ORDERED, upon request, to cause a certified copy of the ORDER/NOTICE TO WITHHOLD INCOME FOR CHILD SUPPORT, with a copy of Texas Family Code Chapter 158 attached, to be delivered to *SERGE DASQUE*'s employer.

*SERGE DASQUE* is ORDERED to provide any subsequent employer with a copy of the ORDER/NOTICE TO WITHHOLD INCOME FOR CHILD SUPPORT.

## PAYMENT OF SUPPORT AND COSTS

*SERGE DASQUE* is ORDERED to pay all support through the registry of the court:
Texas Child Support Disbursement Unit
P O Box 659791
San Antonio, TX 78265-9791

for distribution according to law. All payments shall be identified by:

Obligor name *SERGE DASQUE*,
Obligee name *FABIOLA AIDEE DASQUE*,
Attorney General case number *0012336466*,
cause number *F-1947-12-2*, and
the date on which the withholding occurred.

## STATUTORY WARNINGS

**FAILURE TO OBEY A COURT ORDER FOR CHILD SUPPORT OR FOR
POSSESSION OF OR ACCESS TO A CHILD MAY RESULT IN FURTHER
LITIGATION TO ENFORCE THE ORDER, INCLUDING CONTEMPT OF COURT. A
FINDING OF CONTEMPT MAY BE PUNISHED BY CONFINEMENT IN JAIL FOR UP
TO SIX MONTHS, A FINE OF UP TO $500 FOR EACH VIOLATION, AND A MONEY
JUDGMENT FOR PAYMENT OF ATTORNEY'S FEES AND COURT COSTS.
FAILURE OF A PARTY TO MAKE A CHILD SUPPORT PAYMENT TO THE PLACE
AND IN THE MANNER REQUIRED BY A COURT ORDER MAY RESULT IN THE
PARTY NOT RECEIVING CREDIT FOR MAKING THE PAYMENT.
FAILURE OF A PARTY TO PAY CHILD SUPPORT DOES NOT JUSTIFY DENYING
THAT PARTY COURT-ORDERED POSSESSION OF OR ACCESS TO A CHILD.
REFUSAL BY A PARTY TO ALLOW POSSESSION OF OR ACCESS TO A CHILD
DOES NOT JUSTIFY FAILURE TO PAY COURT-ORDERED CHILD SUPPORT TO
THAT PARTY.
EACH PERSON WHO IS A PARTY TO THIS ORDER IS ORDERED TO NOTIFY
EACH OTHER PARTY, THE COURT, AND THE STATE CASE REGISTRY OF ANY
CHANGE IN THE PARTY'S CURRENT RESIDENCE ADDRESS, MAILING
ADDRESS, HOME TELEPHONE NUMBER, NAME OF EMPLOYER, ADDRESS OF
EMPLOYMENT, DRIVER'S LICENSE NUMBER, AND WORK TELEPHONE
NUMBER. THE PARTY IS ORDERED TO GIVE NOTICE OF AN INTENDED
CHANGE IN ANY OF THE REQUIRED INFORMATION TO EACH OTHER PARTY,
THE COURT, AND THE STATE CASE REGISTRY ON OR BEFORE THE 60TH DAY
BEFORE THE INTENDED CHANGE. IF THE PARTY DOES NOT KNOW OR COULD
NOT HAVE KNOWN OF THE CHANGE IN SUFFICIENT TIME TO PROVIDE 60-
DAY NOTICE, THE PARTY IS ORDERED TO GIVE NOTICE OF THE CHANGE ON
OR BEFORE THE FIFTH DAY AFTER THE DATE THAT THE PARTY KNOWS OF
THE CHANGE.
THE DUTY TO FURNISH THIS INFORMATION TO EACH OTHER PARTY, THE
COURT, AND THE STATE CASE REGISTRY CONTINUES AS LONG AS ANY**

PERSON, BY VIRTUE OF THIS ORDER, IS UNDER AN OBLIGATION TO PAY CHILD SUPPORT OR ENTITLED TO POSSESSION OF OR ACCESS TO A CHILD.

FAILURE BY A PARTY TO OBEY THE ORDER OF THIS COURT TO PROVIDE EACH OTHER PARTY, THE COURT AND, THE STATE CASE REGISTRY WITH CHANGE IN THE REQUIRED INFORMATION MAY RESULT IN FURTHER LITIGATION TO ENFORCE THE ORDER, INCLUDING CONTEMPT OF COURT. A FINDING OF CONTEMPT MAY BE PUNISHED BY CONFINEMENT IN JAIL FOR UP TO SIX MONTHS, A FINE OF UP TO $500 FOR EACH VIOLATION, AND A MONEY JUDGMENT FOR PAYMENT OF ATTORNEY'S FEES AND COURT COSTS.

## COMPANION NOTICE

IT IS ORDERED that each conservator of a child, subject to this Order, has the duty to inform and shall inform the other conservator of the child if he or she marries, intends to marry, or resides for at least 30 days with another person (1) he or she knows is registered as a sex offender under Chapter 62, Texas Code of Criminal Procedure, or (2) who is charged with an offense for which on conviction that person would be required to register under Chapter 62. Such Notice must be given as soon as practicable, but not later than the 40th day after the conservator of the child begins to reside with such person, or not later than the 10th day after the date of the marriage to such a person. The Notice must include a description of the offense that is the basis of the person's requirement to register as a sex offender or the offense with which the person is charged. Failure to provide this Notice as ordered herein is a Class C misdemeanor.

### NOTICE TO THE STATE CASE REGISTRY

As is required by the preceding section, any change of a party's residential address, mailing address, home telephone number, name of employer, address of employment, driver's license number, and work telephone number are to be reported by mail to the:

State Case Registry
Contract Services Section
MC 046S
P.O. Box 12017
Austin, TX 78711-2017

in addition to reporting the change(s) to the other parties and the Court.

## REVIEW

Pursuant to 42 USC 666(a)(10), a parent subject to a child support order, at least every three years, has the right to request a review of the ordered child support amounts by contacting the Child Support Division of the Attorney General.

## WARNING TO PARTIES

**ANY OBLIGOR WHO FAILS TO PROVIDE HEALTH INSURANCE AS ORDERED IS LIABLE FOR ANY NECESSARY MEDICAL EXPENSES OF THE CHILD WITHOUT REGARD TO WHETHER THE EXPENSES WOULD HAVE BEEN PAID BY HEALTH INSURANCE HAD IT BEEN PROVIDED.**

Each party is ORDERED AND DECREED to keep the other party fully and promptly informed of his or her current street address of residence, home telephone number, name of employer, place of employment, and work telephone number and of the address of the child's school or day-care center. Each party is ORDERED AND DECREED to give written notice to each other party of an intended change in the party's current residence address, mailing address, home telephone number, name of employer, address of employment, and work telephone number. IT IS ORDERED AND DECREED that the party shall give written notice by registered or certified mail of an intended change in the required information to each other party on or before the 60th day before the change is made. If the party does not know or could not have known of the change in sufficient time to provide the 60 day notice, IT IS ORDERED AND DECREED that the party shall provide the written notice of the change on or before the 5th day after the date the party knew of the change.

Each party's current address, phone, and employer information are listed below:

Name:      Fabiola Aidee Dasque
Address:   ███████████. 1, Alton, Texas 78572
Phone:     (956) 681-6755
Employer:  La Joya ISD

Name:      Serge Dasque
Address:   ███████████. Apt. C, Mission, TX 78572
Phone:     (956) 789-0713
Employer:  La Joya ISD

EACH PERSON WHO IS A PARTY TO THIS ORDER IS ORDERED TO NOTIFY EACH OTHER PARTY WITHIN TEN DAYS AFTER THE DATE OF ANY CHANGE IN THE PARTY'S CURRENT RESIDENCE ADDRESS, MAILING ADDRESS, HOME TELEPHONE NUMBER, NAME OF EMPLOYER, ADDRESS OF EMPLOYMENT, OR WORK TELEPHONE NUMBER. THE PARTY IS ORDERED TO GIVE NOTICE OF AN INTENDED CHANGE IN ANY OF THE REQUIRED INFORMATION TO EACH OTHER PARTY ON OR BEFORE THE 60TH DAY BEFORE THE INTENDED CHANGE. IF THE PARTY DOES NOT KNOW OR COULD NOT HAVE KNOWN OF THE CHANGE IN SUFFICIENT TIME TO PROVIDE 60-DAY NOTICE, THE PARTY IS ORDERED TO GIVE NOTICE OF THE CHANGE ON OR BEFORE THE FIFTH DAY AFTER THE DATE THAT THE PARTY KNOWS OF THE CHANGE.

THE DUTY TO FURNISH THIS INFORMATION TO EACH OTHER PARTY CONTINUES AS LONG AS ANY PERSON, BY VIRTUE OF THIS ORDER, IS UNDER AN OBLIGATION TO PAY CHILD SUPPORT OR ENTITLED TO POSSESSION OF OR ACCESS TO A CHILD.

FAILURE BY A PARTY TO OBEY THE ORDER OF THIS COURT TO PROVIDE EACH OTHER PARTY WITH THE CHANGE IN THE REQUIRED INFORMATION MAY RESULT IN FURTHER LITIGATION TO ENFORCE THE ORDER, INCLUDING CONTEMPT OF COURT. A FINDING OF CONTEMPT MAY BE PUNISHED BY CONFINEMENT IN JAIL FOR UP TO SIX MONTHS, A FINE OF UP TO $500 FOR EACH VIOLATION AND A MONEY JUDGMENT FOR PAYMENT OF ATTORNEY'S FEES AND COURT COSTS.

*Division of Marital Estate*

The Court finds that the parties own community property, which should be divided in an equitable manner.

IT IS THEREFORE ORDERED AND DECREED that the community property owned by the parties shall be divided as follows:

IT IS ORDERED AND DECREED that Petitioner, Fabiola Aidee Dasque is awarded the following property as her sole and separate property, and Respondent is divested of all right, title, interest in, and claim to such property:

2010 Ford Focus motor vehicle, vehicle identification number 3FADP4EJ3CM218818, together with all prepaid insurance, keys, and title documents;

All household furniture, furnishings, fixtures, goods, appliances, equipment and vehicles that are presently in the possession of or subject to the sole control of Petitioner;

All clothing, jewelry, and other personal effects in the possession of or subject to the sole control of Petitioner;

All accrued causes of action, whether matured, contingent, or pending, to which Petitioner is or may become a party, together with any and all proceeds from such litigation; and

Any and all stocks, bonds, and sums of cash in the possession of or subject to the sole control of Petitioner, including money on account in banks, savings institutions, or other financial institutions, and including pension funds and/or retirement investments, which accounts stand in Petitioner's sole name or from which Petitioner has the sole right to withdraw funds or which are subject to Petitioner's sole control.

All property awarded to Petitioner shall be subject to any indebtedness charged against it.

IT IS ORDERED AND DECREED that Respondent, Serge Dasque is awarded the following property as his sole and separate property, and Petitioner is divested of all right, title, interest in, and claim to such property:

2003 Ford Explorer motor vehicle, vehicle identification number 1FMZU62K83UB51450, together with all prepaid insurance, keys, and title documents No.

All household furniture, furnishings, fixtures, goods, appliances, equipment, and vehicles presently in the possession of or subject to the sole control of Respondent;

All clothing, jewelry, and other personal effects in the possession of or subject to the sole control of Respondent;

All accrued causes of action, whether matured, contingent, or pending, to which Respondent is or may become a party, together with any and all proceeds from such litigation; and

Any and all stocks, bonds, and sums of cash in the possession of or subject to the sole control of Respondent, including money on account in banks, savings institutions, or other financial institutions, and including pension funds and/or retirement investments, which accounts stand in Respondent's sole name or from which Respondent has the sole right to withdraw funds or which are subject to Respondent's sole control.

The Court finds that the parties have accumulated community debt, which should be divided in an equitable manner.

IT IS THEREFORE ORDERED AND DECREED that the community debt shall be divided as follows:

IT IS ORDERED AND DECREED that Petitioner, Fabiola Dasque, shall pay, as part of the division of the estate of the parties, the following and shall indemnify and hold Respondent and Respondent's property harmless from any failure to so discharge these items:

W-1. The balance due, including principal, interest, and all other charges, on the promissory note secured by a lien on the motor vehicle awarded to the wife.

W-2. All debts, charges, liabilities, and other obligations incurred solely by Fabiola Dasque from and after November 21, 2008 unless express provision is made in this decree to the contrary.

W-3. The following debts, charges, liabilities, and obligations:

1. $175.35 towards the Citibank credit card, Account Number 5419-3109-3304-6754 opened on April of 2000, amount owed $664.69 (as of November of 2008).

2. $75.35 towards the Sam's Club / GE Money Bank, Account Number 77141000081344111 opened on August of 2001, amount owed $568.91 (as of November of 2008).

3. $209.96 towards the HSBC Bank GM Card, Account Number 5466-4102-6170-0832, opened on July of 1999.

4. $295.44 towards the Citi Mastercard credit card, Account Number 5256-5003-2465-0125 opened on October of 2007, amount owed $590.00 (as of November of 2008).

5. $557.93 towards the Discover credit card, Account Number 6011-0083-7022-7636, opened on March of 1999, amount owed $4,145.06 (as of November of 2008).

IT IS ORDERED AND DECREED that Respondent, Serge Dasque, shall pay, as a part of the division of the estate of the parties, the following and shall indemnify and hold Petitioner and Petitioner's property harmless from any failure to so discharge these items:

H-1.    The balance due, including principal, interest, and all other charges, on the promissory note secured by a lien on the 2003 Ford Explorer motor vehicle awarded to the husband.

H-2.    All debts, charges, liabilities, and other obligations incurred solely by Serge Dasque from and after November 21, 2008 unless express provision is made in this decree to the contrary.

H-3.    The following debts, charges, liabilities, and obligations:

1.    Bank of America credit card, Account Number 5490-3573-1496-5922 opened on April of 2008, amount owed $4,717.22 (as of November of 2008).

2.    The remaining balance on the Citibank credit card, Account Number 5419-3109-3304-6754 opened on April of 2000, amount owed $664.69 (as of November of 2008).

3.    Citibank credit card, Account Number 5424-1803-3436-7627 opened on April of 2000, amount owed $4,664.98 (as of May of 2009).

4.    Citi Advantage Mastercard credit card, Account Number 5466-1601-6689-9516 opened on December of 1998, amount owed $1,414.90 (as of November of 2008).

5.    The remaining balance on the Sam's Club / GE Money Bank, Account Number 77141000081344111 opened on August of 2001, amount owed $568.91 (as of November of 2008).

6.    The remaining balance on the HSBC Bank GM Card, Account Number 5466-4102-6170-0832, opened on July of 1999, amount owed $0.00 (as of November of 2008).

7.    The remaining balance on the Citi Mastercard credit card, Account

Number 5256-5003-2465-0125 opened on October of 2007, amount owed $590.00 (as of November of 2008).

8.   The remaining balance on the Discover credit card, Account Number 6011-0083-7022-7636, opened on March of 1999, amount owed $4,145.06 (as of November of 2008).

IT IS FURTHER ORDERED AND DECREED, as a part of the division of the estate of the parties, that any indebtedness or liability not expressly assumed by a party under this decree is to be paid by the party incurring the indebtedness or liability.

IT IS ORDERED AND DECREED that each party shall pay, as a part of the division of the estate of the parties, any and all debts incurred by that party, and each party shall indemnify and hold each other's property harmless from any failure to so discharge any such debts.

IT IS FURTHER ORDERED AND DECREED that the Petitioner and Respondent shall execute all instruments necessary to effect this Decree and that the parties herein shall have all appropriate and necessary writs, execution and process, as many and as often as necessary to accomplish the execution and final disposition of this judgment.

*Court Costs*

Costs of court are to be borne by the party by whom such costs were incurred.

*Name Change*

IT IS ORDERED AND DECREED that Petitioner's name is changed to Fabiola Ponce.

*Clarifying Order*

Without affecting the finality of this Decree of Divorce, this Court expressly reserves the right to make orders necessary to clarify and enforce this decree.

*Relief Not Granted*

IT IS ORDERED AND DECREED that all relief requested in this cause and not expressly granted is denied.

*Date of Judgment*
    This divorce judicially PRONOUNCED AND RENDERED in County Court No. 4 in Edinburg, Hidalgo County, Texas, on August 12, 2013. This order was signed on

_____

_____
JUDGE PRESIDING

APPROVED AS TO FORM ONLY:

_____
Attorney for Petitioner, Amber L. VanSchuyver

_____
Attorney for Respondent, Brandon Holubar

_____
Attorney for OAG

Decree of Divorce
*Fabiola Dasque v. Serge Dasque*

TRLA No. 01-107501

# APPX. B

Cause Number F-5441-08-5

FILED
2008 DEC -5 P 3:18

IN THE MATTER OF THE MARRIAGE OF:

Serge Dasque, Petitioner

AND

Fabiola Aidee Dasque, Respondent

AND

IN THE INTEREST OF MINOR CHILDREN:

C███████ S██████ D████

IN THE DISTRICT COURT

___ JUDICIAL DISTRICT

HIDALGO COUNTY, TEXAS

## ORIGINAL PETITION FOR DIVORCE

### 1.   Parties and Discovery

This suit is brought by Petitioner, Serge Dasque. The Petitioner's birth date is 11/19/1965 and currently resides in Hidalgo County, TX at the following address:

█████████████ Apt A
Edinburg, TX 78539-3178

The Respondent, Fabiola Aidee Dasque, birth date is 07/08/1974 and currently resides in Hidalgo County, TX at the following address:

█████████████ Apt A
Edinburg, TX 78539-3178

Discovery Level 2 applies to this case because there are minor children of the marriage whose custody and support will be determined and/or the value of the marital estate that we currently own is more than $50,000.00.

### 2.   Residency (Domicile)

Petitioner and Respondent has been a domiciliary of the State of Texas for the preceding six months and a resident of the county in which this petition is filed for the preceding ninety days.

### 3.   Service of Process

**Waiver.** No service is necessary at this time, because Respondent has signed or will sign a Waiver of Service. If my spouse does not sign a Waiver of Service, I will ask a sheriff or constable to give a copy of this Original Petition for Divorce to Respondent at the following address:

█████████████ Apt A

Edinburg, TX 78539-3178

**4. Protective Order Statement**

There is no protective order between the parties and no application for one is pending.

**5. Marriage and Separation**

Petitioner and Respondent were married on or about 07/06/2007, and ceased to live together as husband and wife on or about 11/21/2008.

**6. Grounds**

The marriage has become insupportable because of discord or conflict of personalities that destroys the legitimate ends of the marriage relationship and prevents any reasonable expectation of reconciliation.

**7. Community Property (including debts)**

My spouse and I will try to reach an agreement on how our community property and debts are divided. But if we cannot agree, I would like the Court to decide who gets the items that my spouse and I bought while we were married. I would also like for the Court to decide who pays the debts that my spouse and I owe. I would like the Court to make these decisions in a way that the Court believes is fair and according to the laws of Texas.

**8. Separate Property**

I request that the following items be confirmed as Petitioner's separate property as they were owned before the marriage or acquired during marriage by inheritance, gift to Petitioner only, or represents the proceeds, other than lost wages, of a personal injury lawsuit:

I request that the following items be confirmed as Respondent's separate property as they were owned before the marriage or acquired during marriage by inheritance, gift to Respondent only, or represents the proceeds, other than lost wages, of a personal injury lawsuit:

**9. Spousal Maintenance**

Maintenance is not requested.

**10. Children of the Marriage**

The wife is not pregnant.

The following children now under eighteen years old were born to or adopted by the parties:

| Name | Age | Sex | Birth date | Birthplace |
|------|-----|-----|-----------|------------|
| 1. C█████ S█████ Dasque | 7 | male | 10██/2001 | Madero, Tamps |

**Children's Property.** No property, aside from personal effects is owned by the children above.

**Information required by Texas Family Code § 152.209**
Is not required because both parents reside in Texas

**Court of Continuing Jurisdiction**

No other person has a court-ordered right to be notified about this divorce. No court ordered relationship exists between the children and any other person. No other court has continuing, exclusive jurisdiction over any child in the above list.

**Conservatorship (Custody), Possession and Support**

Upon final hearing,

Petitioner and Respondent should be appointed Joint Managing Conservators of the child(ren) and Petitioner should have the right to establish the child(ren)'s primary residence.

Possession should be arranged according to the best interests of the child(ren).

Respondent should be ordered to make payments for the support of the children in the manner specified by the Court.

11. **Long-arm Jurisdiction:**

Does not apply.

12. **Restore Prior Name**

Wife requests that her name be changed back to: Fabiola Aidee Perez Ponce

13. **Personal Information**

In the Final Decree of Divorce, I will include the Social Security and driver's license numbers, current addresses, and phone numbers for each party and child who is subject to this suit, as required by section 105.006 of the Texas Family Code.

## PRAYER

Petitioner prays that citation and notice be given to Respondent as required by law.

Petitioner prays that the Court grant a divorce and decree such other relief as is requested in this petition.

Petitioner prays for such other and further relief, general and special, to which Petitioner may be entitled.

Dated: __12/05__, 20 _08_

_Serge Dasque, Petitioner, Pro Se_

Address: 917 Lexington Circle Apt A
Edinburg, TX 78539-3178
Phone: 956-287-4639

# APPX. C

NO. F-5441-08-5

IN THE MATTER OF THE MARRIAGE OF  §
§
SERGE DASQUE  §
AND  §
FABIOLA AIDEE DASQUE  §
§
AND IN THE INTEREST OF  §
CRISTOPHER SEBASTIAN DASQUE,  §
MINOR CHILD  §

IN THE COUNTY COURT

AT ___ O'CLOCK ___ M

MAR 16 2009  #5

LAURA HINOJOSA, CLERK
District Courts, Hidalgo County
HIDALGO COUNTY, TEXAS

## COUNTER-PETITION FOR DIVORCE

1.  Discovery in this case is intended to be conducted under level 2 of rule 190 of the Texas Rules of Civil Procedure.

2.  This suit is brought by Fabiola Aidee Dasque, Counter-Petitioner, who is 34 years of age and who resides at 917 Lexington Circle, Apt A, Edinburg, Texas 78539.

Serge Dasque, Counter-Respondent, is 34 years of age and resides at 917 Lexington Circle, Apt A, Edinburg, Texas 78539.

3.  Counter-Petitioner has been a domiciliary of this state for the preceding six-month period and a resident of this county for the preceding 90-day period.

4.  No service of process is necessary at this time.

5.  No protective order under title 4 of the Texas Family Code is in effect, and no application for a protective order is pending with regard to the parties to this suit.

6.  The Parties were married on or about July 6, 2007, in Edinburg, Texas. On or about 11/21/2008, they separated and ceased to live together as husband and wife.

7.  Counter-Respondent is guilty of cruel treatment toward Counter-Petitioner of a nature that renders further living together insupportable.

The marriage has become insupportable because of discord or conflict of personalities between Counter-Petitioner and Counter-Respondent that destroys the legitimate ends of the marriage relationship and prevents any reasonable expectation of reconciliation.

8.  Counter-Petitioner and Counter-Respondent are the parents of the following child who is not under the continuing jurisdiction of any other court:

NAME: C█████████ S███████ DASQUE

SEX: MALE
BIRTHPLACE: MADERO, TAMAULIPAS
BIRTHDATE: 10█/2001
SOCIAL SECURITY NO.:

The appointment of Counter-Petitioner and Counter-Respondent as joint managing conservators would not be in the best interest of the child. Counter-Petitioner, on final hearing, should be appointed sole managing conservator, with all the rights and duties of a parent sole managing conservator, and Counter-Respondent should be ordered to make payments for the support of the child and to provide medical child support in the manner specified by the Court. Counter-Petitioner requests that the payments for the support of the child survive the death of Counter-Respondent and become the obligation of Counter-Respondent's estate.

Counter-Petitioner, Fabiola Aidee Dasque, should be designated as the conservator who has the exclusive right to designate the primary residence of the child.

Counter-Respondent has a history or pattern of committing family violence during the two-year period preceding the date of filing of this suit. Counter- Petitioner requests that the Court render a possession order that is designed to protect the safety and well-being of the child and any other person who has been a victim of family violence committed by Counter-Respondent, including but not limited to ordering that the periods of access be continuously supervised by an entity or person chosen by the Court, ordering that the exchange of possession of the child occur in a protective setting, ordering Counter-Respondent to refrain from the consumption of alcohol or a controlled substance within the twelve hours before or during the period of access to the child.

9.    During the marriage certain community property has been accumulated by the parties. Counter-Petitioner requests the Court to order a division of the estate of Counter-Petitioner and Counter-Respondent in a manner that the Court deems just and right, as provided by law.

10.    Counter-Respondent has separate debt that is not owed by the community, and Counter-Petitioner requests the Court to confirm that separate debt as Counter-Petitioner's separate debt and obligation.

11.    Counter-Petitioner requests the Court, after trial on the merits, to grant the following permanent injunctions:

a.    Communicating with Counter-Petitioner in person, by telephone, or in writing in vulgar, profane, obscene, or indecent language or in a coarse or offensive manner.

b.    Threatening Counter-Petitioner in person, by telephone, or in writing to take unlawful action against any person.

c.    Placing one or more telephone calls, anonymously, at any unreasonable hour, in

an offensive and repetitious manner, or without a legitimate purpose of communication.

       d.      Causing bodily injury to Counter-Petitioner or to a child of either party.

       e.      Threatening Counter-Petitioner or a child of either party with imminent bodily injury.

       f.      Withdrawing the child from enrollment in the school or day-care facility where the child is presently enrolled.

       g.      Hiding or secreting the child from Counter-Petitioner.

       h.      Making disparaging remarks regarding Counter-Petitioner in the presence or within the hearing of the child.

       i.      Consuming alcohol within the 12 hours before or during the period of possession of or access to the child.

12.      Counter-Petitioner is not requesting a name change.

## PRAYER

Counter-Petitioner prays that citation and notice issue as required by law and that the Court grant a divorce and all other relief requested in this petition.

Counter-Petitioner prays that, on final hearing, the Court enter a permanent injunction enjoining Counter-Respondent, in conformity with the allegations of this petition, from the acts set forth above.

Counter-Petitioner prays that the Court grant a divorce and decree the other relief requested in this petition. Counter-Petitioner prays for general relief.

Respectfully Submitted,

*Fabiola A. Dasque*

Fabiola Aidee Dasque, *pro se*
1902 Yary Drive
Edinburg, Texas 78542
(956) 562-2946

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above was served on Respondent as follows:

Via U.S. mail this 16 day of March 2009.

Fabiola A Dasque

Fabiola Aidee Dasque, *pro se*

# APPX. D

REPORTER'S RECORD
VOLUME 1 OF 1

TRIAL COURT CAUSE NO. F-5441-08-5

IN THE MATTER OF THE MARRIAGE) IN THE COUNTY COURT
OF SERGE DASQUE and FABIOLA )
AIDEE DASQUE )
)
AND ) AT LAW NO. 5
)
IN THE INTEREST OF MINOR )
CHILDREN ) HIDALGO COUNTY, TEXAS

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**FINAL DIVORCE HEARING**
**May 7, 2009**

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

On the 7th day of May, 2009, the following proceedings came on to be heard in the above-entitled and numbered cause, before the Honorable Arnoldo Cantu, Jr., Judge presiding, held in Edinburg, Hidalgo County, Texas.

Proceedings reported by computerized stenotype machine; Reporter's Record produced by computer-aided transcription.

COPY

GAY R. RICHEY, Texas CSR #7260
Official Court Reporter - County Court at Law No. 5
Hidalgo County Courthouse
100 North Closner, Second Floor
Edinburg, Texas 78539
(956) 318-2460

APPEARANCES:


MR. BRANDON HOLUBAR
SBOT NO: 24041124
LAW OFFICE OF JOHN KING
3409 North 10th Street, Suite 100
McAllen, Texas 78501
Telephone: (979) 687-6294
ATTORNEY FOR PETITIONER,
MR. SERGE DASQUE


MS. FABIOLA DASQUE
PRO SE
917 Lexington Circle
Apartment A
Edinburg, Texas 78539

3<

## INDEX

                                                    PAGE

Appearances . . . . . . . . . . . . . . . . .        4

Court's Ruling . . . . . . . . . . . . . .           8

Reporter's Certificate . . . . . . . . . .          11

May 7, 2009

Morning Session

PROCEEDINGS

THE COURT: F-5441-08-5, also P-07-5095, Serge Dasque vs. Fabiola Aidee Dasque, and in the Interest of C██████ S██████ Dasque, a Minor.

Mr. Holubar, you're here representing Mr. Dasque?

MR. HOLUBAR: That is correct, Your Honor.

THE COURT: And have you and Mr. Dasque and Ms. Dasque, who is also present pro se, had a chance to visit?

MR. HOLUBAR: Yes, Your Honor, we have. We've come to an agreement on this case.

THE COURT: All right. And Mr. Delgado was translator for Ms. Dasque.

Let me have Mr. Dasque and Ms. Dasque each raise your right hand.

(Witnesses Sworn).

MR. DASQUE: Yes, sir.

MS. DASQUE: Yes, sir.

THE COURT: You may put your hand down.

Mr. Holubar, was there a partial agreement or total agreement reached here?

MR. HOLUBAR: Your Honor, there is a partial agreement as to the custody, of the minor child C██████, and

the visitation and the restriction regarding residency. The issues that we're going to try to take care of after this is going to be the debts and the assets that the parties have. We haven't come to an agreement, but we think that we can without having to come back. If we can't, Judge, then what we'll do is seek a decision regarding our -- decision regarding that issue.

THE COURT: Okay.

You want to proceed to put the agreement on the record?

MR. HOLUBAR: I do, Judge.

THE COURT: Mr. Delgado, you will translate for Ms. Dasque.

THE BAILIFF: Yes, Judge.

**SERGE DASQUE,**

the witness, being duly cautioned and sworn to tell the truth, testified as follows:

DIRECT EXAMINATION

BY MR. HOLUBAR:

Q.   Your name is Serge Dasque; is that correct?

A.   Yes, sir.

Q.   And you're here today seeking a divorce; is that correct?

A.   Yes, sir.

Q.   And Fabiola Aidee Dasque is your wife at this time, correct?

A. Yes, sir.

Q. And you're seeking a divorce from her; is that right?

A. Yes, sir.

Q. And you have a child with Ms. Dasque; is that correct?

A. Yes, sir.

Q. And the child's name is C█████ S█████ Da███; is that correct?

A. That's correct.

Q. Born October ███, 2001?

A. Yes, sir.

Q. Okay. And regarding the custody of this child and the visitation, is that beginning on the Thursday of every week you're going to pick C█████ up from school; is that correct.

A. That's correct.

THE INTERPRETER: Thursday, right after school?

MR. HOLUBAR: After school.

BY MR. HOLUBAR:

Q. And C█████ will spend Thursday night, Friday night, Saturday night.

And you'll return C█████, to the residence of his mother, every Sunday at 6:00 p.m.; is that correct?

A. That's correct.

Q. Okay. We also have an agreement as to 150 dollars

for child support; is that correct?

A.  Yes.

Q.  And we also have an agreement that the geographical restriction of the child will be restricted to Hidalgo County; is that correct?

A.  That's correct.

MR. HOLUBAR:  Judge, that's the agreement as it stands.

THE COURT:  Okay.

Mr. Dasque, is that your understanding of the agreement?

MR. DASQUE:  Yes, Your Honor.

THE COURT:  Ms. Dasque, is that your understanding of the agreement?

MS. DASQUE:  Yes.

THE COURT:  And, Ms. Dasque, are you asking this Court to approve the agreement?

MS. DASQUE:  Yes.

THE COURT:  And, Mr. Dasque, are you asking this Court to approve the agreement?

MR. DASQUE:  Yes, Your Honor.

THE COURT:  Court will approve the agreement as read into the record.

Counsel, you'll be talking to Mr. Dasque and Ms. Dasque about the debts that are pending?

MR. HOLUBAR: Yes, Your Honor, we will.

THE COURT: Okay. Court will approve the agreement as read into the record. Divorce is granted. The issue of division of debts is to be addressed at a later date either by hearing or by written amendment to the decree.

MR. HOLUBAR: Yes, Your Honor.

THE COURT: Nothing further?

MR. HOLUBAR: Judge, I do have one more thing.

THE COURT: Yes, sir.

MR. HOLUBAR: The parties currently reside together, with C████████ in an apartment. They have paid rent for the month of March -- excuse me, for the month of May. And I think that the agreement should begin probably after C████████ gets out of school, at this time -- which I believe the parties will probably live separately at that point.

THE COURT: Okay. Have the parties decided who's going to stay with the apartment and who's going to move out of the apartment?

MR. HOLUBAR: Not at this time, Your Honor.

THE COURT: Okay. That's something that they need to be addressing because the next month's rent will come due pretty soon. I'm going to go off the record here and discuss that issue with Ms. Dasque in Spanish.

(Off the Record).

THE COURT: Mr. Holubar, Ms. Dasque advises me

that the child's last day of school is either June 3rd or June 4th. If there's a problem in staying together until June 3rd or 4th, when the school year ends -- at this time she has indicated to this Court that she will find an apartment sometime between now and that date, so that when that date comes, that -- you know, the child's last day of school, she will have a place to move into.

MR. HOLUBAR: Okay.

Is that agreeable, Mr. Dasque?

MR. DASQUE: That's fine.

THE COURT: Okay.

(Speaking Spanish).

She's already looking around and she may have a place.

MR. HOLUBAR: Okay. Your Honor, I think on behalf of Ms. Dasque -- I don't know if she wants to change her name, just maybe --

THE COURT: (Speaking Spanish).

She said she's willing to keep the last name.

Nothing further at this time?

MR. HOLUBAR: Judge, nothing further at this time, Your Honor.

THE COURT: Okay. Mr. Dasque, and, Ms. Dasque, I'm going to urge you -- I'm going to urge both of you to remember you have a child together. You take care of the

child. And, as much as you can, try to take care of each other.

Babies need their moms.

Ms. Dasque, babies need their dads.

And even big babies need their moms and their dads. So take care of the little one, and see that he becomes a big happy baby, okay?

MR. DASQUE: Thank you, sir.

THE COURT: Good luck to both of you.

Mr. Holubar, keep the Court posted on the addition of debts issue.

MR. HOLUBAR: Thank you, sir.

THE COURT: Thank you very much.

Ms. Dasque, Mr. Dasque, good luck to both of you.

MR. DASQUE: Thank you.

(End of Proceedings).

THE STATE OF TEXAS)

COUNTY OF HIDALGO )

I, GAY R. RICHEY, Official Court Reporter in and for the County Court at Law No. 5 of Hidalgo County, State of Texas, do hereby certify that the above and foregoing contains a true and correct transcription of all portions of evidence and other proceedings requested in writing by counsel for the parties to be included in this volume of the Reporter's Record, in the above-styled and numbered cause, all of which occurred in open court or in chambers and were reported by me.

I further certify that this Reporter's Record of the proceedings truly and correctly reflects the exhibits, if any, offered by the respective parties.

I further certify that the total cost of this Reporter's Record is $_____.__ and will be paid by TEXAS RIO GRANDE LEGAL AID.

WITNESS MY OFFICIAL HAND this the 25th day of March , 2011.

Gay R. Richey, CSR
Certification No. 7260
Date of Expiration: 12-31-12
Official Court Reporter
County Court at Law No. 5
100 North Closner
Edinburg, Texas 78539
Telephone: (956) 318-2460

# APPX. E

March 12th, 2010



**Laura Hinojosa**
Hidalgo County
District Clerk

IN RE: F-5441-08-5
      SERGE DASQUE
      VS
      FABIOLA AIDEE DASQUE

Dear Sir/Madam:

    Pursuant Rule 165a of the Texas Rules of Civil Procedure, Notice is hereby given that the Hon. Arnoldo Cantu Judge of the County Court at Law No. 5 of Hidalgo County, Texas has set a dismissal hearing in his courtroom on the 12th day of May, 2010 at 9:00 a.m., to determine whether the above case should be Dismissed for Want of Prosecution. The Court shall Dismiss for Want of Prosecution unless you show good cause for maintaining the case on the docket. If maintained on the docket, the case will be set for trial at such hearing.

    If the case is ripe for default, the party seeking a Default Judgment shall be prepared to present the evidence supporting the default as a continuance will not be permitted. The Judgment shall also be ready for the Judge's signature at the conclusion of the hearing.

    Additionally, please do not call or write the court requesting setting or a Docket Control Conference because counsel will be expected to appear in person before the Court at said dismissal hearing.

    FAILURE TO APPEAR WILL RESULT IN AN AUTOMATIC DISMISSAL OF YOUR CASE.

Sincerely,
Laura Hinojosa
District Clerk
Hidalgo County

Oneida Lamas, Deputy Clerk
cc: Courts File
AMBER VANSCHUYVER 316 S CLOSNER BLVD EDINBURG TX 78539
C. BRANDON HOLUBAR 3409 N 10TH STREET MCALLEN TX 78501

Post Office Box 87

Edinburg, Texas 78540

Telephone (956) 318-2200

Fax (956) 318-2251

districtclerk@co.hidalgo.tx.us

# APPX. F

# ARNOLDO CANTU, JR.

JUDGE, COUNTY COURT AT LAW NO. 5
HIDALGO COUNTY COURTHOUSE
100 N. Closner
EDINBURG, TEXAS 78539
(956) 318-2460



**Albert Delgado**
OFFICIAL BAILIFF / INTERPRETER

F-5441-08-5

SERGE DASQUE
VS
FABIOLA AIDEE DASQUE

IN THE DISTRICT
COURT OF
HIDALGO COUNTY,
TEXAS
CC5 JUDICAL
COURT

## ORDER OF DISMISSAL

Be it Remember that on the ___11th___ day of ___August___, 2010 came to be heard and considered the Court's Motion to Dismiss the above entitled and numbered cause for want prosecution. After due notice to all Parties and pursuant to Rule 165a of the Texas Rules of Civil Procedure, the Court set this cause for dismissal for Lack of Prosecution and there being no opposition to the Court's Motion to Dismiss. It is therefore, Ordered that the entitled and numbered cause be and it is herby dismissed for lack of prosecution, with costs assessed against Plaintiff/Petitioner.

ARNOLDO CANTU
Presiding Judge
COUNTY COURT AT LAW # 5

DATE___5/22/15___

A true copy I certify
LAURA HINOJOSA
District Clerk, Hidalgo County, Texas
By_____Deputy#24

1553 464

# APPX. G

NO. F-5441-08-5

| | | |
|---|---|---|
| IN THE MATTER OF | § | IN THE COUNTY COURT ~~LAURA CURTOSA, CLERK~~ |
| THE MARRIAGE OF | § | ~~District Courts, Hidalgo County~~ |
| | § | ~~By~~ _____ ~~Deputy~~ |
| SERGE DASQUE | § | |
| AND | § | AT LAW NUMBER FIVE |
| FABIOLA AIDEE DASQUE | § | |
| | § | |
| AND IN THE INTEREST OF | § | |
| CRISTOPHER SEBASTIAN DASQUE, | § | |
| MINOR CHILD | § | HIDALGO COUNTY, TEXAS |

## RESPONDENT'S VERIFIED MOTION TO REINSTATE

Respondent, Fabiola Dasque, asks the court to reinstate this case on its docket, under the authority of Texas Rule of Civil Procedure 165a.

### A. Introduction

1. Petitioner in this suit is Serge Dasque. Respondent is Fabiola Dasque.

2. Petitioner filed an Original Petition for divorce on December 15, 2008; Respondent filed a Counter Petition for divorce on March 16, 2009.

3. The case was set for hearing on August 11, 2010.

### B. Facts

4. On August 11, 2010, the court dismissed the case for want of prosecution because of the parties' failure to appear at the hearing on August 11, 2010.

5. Respondent files this motion while the court has plenary power, within 30 days of dismissal. The court, therefore, has jurisdiction to reinstate this case. Tex. R. Civ. P. 165a(3).

6. On August 11, 2010, Counsel for Petitioner, Brandon Holubar, and Monica Guerra, appearing for Counsel for Respondent, spoke with Albert Delgado to request a resetting before the Court called the case, because Counsel for Respondent, Amber VanSchuyver had an ongoing trial in Cameron County that day, which she could not be excused from. Mr. Delgado agreed to make the notation and told counsel they would need to contact the court for a resetting, because the court coordinator was out of the office.

7. On August 23, 2010, Respondent received notice of the dismissal and has attempted to reach Mr. Delgado to clarify this matter, but has been unsuccessful.

### C. Failure to Appear

8. A court should grant a motion to reinstate if there is good cause to maintain the case on the docket and there is no injury to the defendant. *See* Tex. R. Civ. P. 165a(1).

9. A court should grant a motion to reinstate if the failure to appear at a trial or a dispositive hearing was not intentional or the result of conscious indifference, but was the result of a mistake or accident or can otherwise be reasonably explained. Tex. R. Civ. P. 165a(3); *Smith v. Babcock & Wilcox Constr. Co.*, 913 S.W.2d 467, 468 (Tex. 1995); *Melton v. Ryander*, 727 S.W.2d 299, 301-02 (Tex. App.-Dallas 1987, writ ref'd n.r.e.). A failure to appear is not intentional or due to conscious indifference within the meaning of Rule 165a merely because it is deliberate. *Smith*, 913 S.W.2d at 468. To support a dismissal, the failure to appear must be without adequate justification. *Id.* Proof of such justification-accident, mistake, or other reasonable explanation-negates the intent or conscious indifference for which reinstatement can be denied. *Id.*; *Bank One v. Moody*, 830 S.W.2d 81, 84 (Tex. 1992).

10. Petitioner and Respondent's failure to appear was not intentional. The parties spoke with Mr. Delgado on August 11, 2010, and it was their understanding that they were passing the hearing and it would be reset.

## D. Request for Hearing

11. Respondent requests that the trial court conduct an oral hearing. Rule 165a requires an oral hearing on any timely filed motion to reinstate. Tex. R. Civ. P. 165a(3); *Gulf Coast Inv. Corp. v. NASA 1 Bus. Ctr.*, 754 S.W.2d 152, 153 (Tex. 1988). The trial court must set a hearing on the motion to reinstate as soon as practicable. Tex. R. Civ. P. 165a(3); *Thordson v. City of Houston*, 815 S.W.2d 550, 550 (Tex. 1991).

## E. Conclusion

12. The parties appeared on August 11, 2010 to reset the hearing and therefore, the case was improperly dismissed. Respondent requests that the trial court reinstate this matter. This case should be decided on the merits, not on a procedural default.

## F. Prayer

13. For these reasons, Respondent asks the court to set this motion for hearing and, after the hearing, grant the motion and reinstate this case on the docket. Respondent prays for general relief.

Respectfully submitted,

TEXAS RIOGRANDE LEGAL AID, INC.
1331 Texas Ave.
El Paso, TX 79901
(915) 585-5100
(915) 544-3789 FAX

BY: _____
Amber L. VanSchuyver
State Bar No. 24066232
Attorney for Respondent

## VERIFICATION

STATE OF TEXAS §
HIDALGO COUNTY §

Before me, the undersigned notary, on this day personally appeared Monica Guerra, the affiant, a person whose identity is known to me. After I administered an oath to affiant, affiant testified:

"My name is Monica Guerra and I am an attorney with Texas RioGrande Legal Aid. I have read RESPONDENT'S VERIFIED MOTION TO REINSTATE. The facts stated in it are within my personal knowledge and are true and correct. On August 11, 2010, I appeared on behalf of Respondent, Fabiola Dasque, and spoke with Albert Delgado. I informed Mr. Delgado that Ms. VanSchuyver had an ongoing hearing in Cameron County and was unable to appear. Mr. Holubar and I requested a resetting of this matter. I am capable of making this verification. "

_____
Monica Guerra

SUBSCRIBED AND SWORN TO BEFORE ME, this the 10th day of September 2010.

> ELIZABETH CHERRY
> Notary Public, State of Texas
> My Commission Expires
> 02-13-2012

_____
Notary Public in and for
The State of Texas

My commission expires:

## CERTIFICATE OF SERVICE

I, Amber VanSchuyver, attorney for Respondent, Fabiola Dasque, certify that a true and correct copy of the foregoing Motion to Compel Discovery was served on Petitioner by and through his attorney of record

Mr. C. Brandon Holubar
Law Office of John King
3409 N. 10th St. Suite 100

McAllen, TX 78501
Fax: (956) 687-5514

VIA FACSIMILE and U.S. Mail on this 9th day of September, 2010.

AMBER L. VANSCHUYVER
ATTORNEY FOR RESPONDENT

NO. F-5441-08-5

| | | |
|---|---|---|
| IN THE MATTER OF | § | IN THE COUNTY COURT |
| THE MARRIAGE OF | § | |
| | § | |
| SERGE DASQUE | § | |
| AND | § | AT LAW NUMBER FIVE |
| FABIOLA AIDEE DASQUE | § | |
| | § | |
| AND IN THE INTEREST OF | § | |
| CRISTOPHER SEBASTIAN DASQUE, | § | |
| MINOR CHILD | § | HIDALGO COUNTY, TEXAS |

## ORDER SETTING HEARING ON MOTION TO REINSTATE

The Respondent's Motion to Reinstate is set for hearing the _____ day of _____,

2010, at _____ .M. in the County Court at Law Number Five, Court of Hidalgo County, 100

N. Closner Blvd., Edinburg, Texas 78539.


SIGNED this _____ day of _____, 2010.


_____
JUDGE PRESIDING


Please Send Signed Copies to:

Amber VanSchuyver
Texas RioGrande Legal Aid
1331 Texas Ave.
El Paso, Texas 79901
Fax: (956) 383-4688

Mr. C. Brandon Holubar
Law Office of John King
3409 N. 10th St. Suite 100
McAllen, TX 78501
Fax: (956) 687-5514

# APPX. H

*REPORTER'S RECORD*
*VOLUME 1 OF 1*

*TRIAL COURT CAUSE NO. F-5441-08-5*

*SERGE DASQUE          ) IN THE COUNTY COURT*
*                      )*
*                      )*
*VS.                   ) AT LAW NO. 5*
*                      )*
*                      )*
*FABIOLA DASQUE        ) HIDALGO COUNTY, TEXAS*

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**REINSTATEMENT HEARING**

**OCTOBER 7, 2010**

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

*On the 7th day of October, 2010, the following proceedings came on to be heard in the above-entitled and numbered cause, before the Honorable Arnoldo Cantu, Jr., Judge presiding, held in Edinburg, Hidalgo County, Texas.*

*Proceedings reported by computerized stenotype machine; Reporter's Record produced by computer-aided transcription.*

*GAY R. RICHEY, Texas CSR #7260*
*Official Court Reporter – County Court at Law No. 5*
*Hidalgo County Courthouse*
*100 North Closner, Second Floor*
*Edinburg, Texas 78539*
*(956) 318-2460*

*A P P E A R A N C E S:*

*MR. FELIX RAMOS*
*SBOT NO:  16508015*
*LAW OFFICE OF FELIX RAMOS*
*425 West Nolana Avenue*
*McAllen, Texas 78539*
*Telephone:  (956) 630-6046*
*ATTORNEY FOR SERGE DASQUE*


*MS. JULIA SUZANNE RANEY*
*SBOT NO:  24046678*
*FAMILY VIOLENCE PREVENTION SERVICES, INC.*
*7911 Broadway Street*
*San Antonio, Texas 78209*
*Telephone:  (210) 393-6209*
*ATTORNEY FOR FABIOLA DASQUE*

*INDEX*

PAGE

*Appearances* . . . . . . . . . . . . . . . . .   4

*Court's Ruling* . . . . . . . . . . . . . .   4

*Reporter's Certificate* . . . . . . . . . . .   6

October 7, 2010

Morning Session

P R O C E E D I N G S

THE COURT:  Ms. Raney, good morning.

MS. RANEY:  Good morning.  I have, I believe, a quick announcement on F-5441-08-5.

THE COURT:  Serge Dasque vs. Fabiola Dasque?

MS. RANEY:  Yes, Your Honor.

I am standing in for Brandon Holubar, Your Honor. And my understanding is that he is in agreement with reinstating and having a hearing, Final Hearing, in two weeks.

MR. RAMOS:  And, Your Honor, two weeks from today would work perfectly.

MS. RANEY:  Okay.

THE COURT:  Mr. Delgado, you have a setting?

Can I get you to visit with my staff and see if you can get a setting?

MR. RAMOS:  Okay.  So then the Court will grant Motion to Reinstate?

MS. RANEY:  And, Your Honor --

THE COURT:  Well, let me have counsel approach.

MR. RAMOS:  Okay.

MS. RANEY:  Okay.

(Bench Conference).

THE COURT:  F-5441-08-5, Dasque vs. Dasque, Court

will accept the agreement of counsel and reinstate the case.

(End of Proceedings).

THE STATE OF TEXAS)

COUNTY OF HIDALGO )

       I, GAY R. RICHEY, Official Court Reporter in and for Hidalgo County, State of Texas, do hereby certify that the above and foregoing contains a true and correct transcription of all portions of evidence and other proceedings requested in writing by counsel for the parties to be included in this volume of the Reporter's Record, in the above-styled and numbered cause, all of which occurred in open court or in chambers and were reported by me.

       I further certify that this Reporter's Record of the proceedings truly and correctly reflects the exhibits, if any, offered by the respective parties.

       I further certify that the total cost of this Reporter's Record is $_____.__ and will be paid by MS. KELLY LEONARD.

       WITNESS MY OFFICIAL HAND this the _____ day of _____, 2015.

_____
Gay R. Richey, CSR
Certification No. 7260
Date of Expiration:  12-31-16
Official Court Reporter
Hidalgo County, Texas

# APPX. I

Cause No. F-2873-03-5

| | | |
|---|---|---|
| TAMMY MARIE BABINTEZ | § | IN DISTRICT COURT |
| | § | |
| | § | |
| VS. | § | OF COUNTY COURT AT LAW |
| | § | NO. 5 |
| | § | |
| ADAN JIMENEZ, JR | § | HIDALGO COUNTY, TEXAS |

## ORDER OF TRANSFER & ACCEPTANCE

Be it remembered that by Consent Order of the County Court at Law Judges of

Hidalgo County, Texas the above-referenced case and cases listed herein below are

hereby ORDERED transferred from County Court at Law No. 5 of Hidalgo County,

Texas to the County Court at Law No. 7 of Hidalgo County, Texas.

Signed and entered this ___17th___ day of ___Nov___, 2011.

_____
Arnoldo Cantu, Jr., Transferring Judge
County Court at Law No. 5
Hidalgo County, Texas

_____
Rolando Cantu, Accepting Judge
County Court at Law No. 7
Hidalgo County, Texas

DATE _____

A true copy I certify
LAURA HINOJOSA
District Clerk, Hidalgo County, Texas
By_____Deputy

| | | | | |
|---|---|---|---|---|
| 2. | F-2561-04-5 | 15. | F-3461-08-5 |
| 3. | F-2184-03-5 | 16. | F-5281-09-5 |
| 4. | F-2204-06-5 | 17. | F-4688-07-5 |
| 5. | F-2064-02-5 | 18. | F-4073-09-5 |
| 6. | F-4838-07-5 | 19. | F-580-08-5 |
| 7. | F-2064-02-5 | 20. | F-968-10-5 |
| 8. | F-2063-05-5 | 21. | F-988-10-5 |
| 9. | F-5441-08-5 | 22. | F-4973-08-5 |
| 10. | F-4918-07-5 | 23. | F-1681-10-5 |
| 11. | F-1288-09-5 | 24. | F-3237-06-5 |
| 12. | F-3642-09-5 | 25. | F-3567-09-5 |
| 13. | F-2107-07-5 | 26. | F-2396-10-5 |
| 14. | F-4698-08-5 | 27. | P-298-10-5 |

28. F-2835-10-5
29. F-2988-10-5
30. F-4966-04-5
31. F-157-11-5
32. F-2888-08-5
33. F-605-11-5
34. F-605-11-5
35. F-618-11-5
36. F-4298-07-5
37. F-1017-11-5
38. F-1213-11-5
39. F-1298-11-5
40. F-455-03-5
41. F-1441-11-5
42. F-1580-11-5
43. F-1669-11-5
44. F-1719-11-5
45. F-1082-09-5
46. F-1869-11-5
47. F-1915-11-5
48. F-1976-11-5
49. F-1377-11-5
50. F-2141-11-5
51. F-2221-11-5
52. F-2284-11-5
53. F-4613-11-5
54. F-2342-11-5
55. F-2375-11-5
56. F-2415-11-5
57. F-2466-11-5
58. F-2523-11-5
59. F-1056-08-5
60. F-2262-04-5
61. F-3011-05-5
62. F-2686-11-5
63. F-2738-11-5
64. F-611-04-5
65. F-2824-11-5
66. F-2872-11-5
67. F-2906-11-5
68. F-1745-05-5
69. F-1530-11-5
70. F-3704-00-5

# APPX. J

| | | |
|---|---|---|
| IN THE MATTER OF | § | IN THE COUNTY COURT |
| THE MARRIAGE OF | § | |
| | § | |
| SERGE DASQUE | § | |
| AND | § | AT LAW NUMBER SEVEN |
| FABIOLA AIDEE DASQUE | § | |
| | § | |
| AND IN THE INTEREST OF | § | |
| C████████ S███████ D███████ | § | |
| MINOR CHILD | § | HIDALGO COUNTY, TEXAS |

## INTERIM ORDERS FOR VISITATION AND ORDER RESETTING FINAL HEARING TO RECONSIDER, CORRECT AND/OR CLARIFY DIVORCE DECREE

On December 14, 2011 the Court heard Respondent's Motion to Reconsider, and Motion to Correct and Clarify.

*Appearances*

Petitioner, Serge Dasque, appeared in person and through attorney of record, Felix Ramos, and requested additional time.

Respondent, Fabiola Dasque, appeared in person and through attorney of record, Amber VanSchuyver, and announced ready.

*Jurisdiction*

The Court, after examining the record and hearing the evidence and argument of counsel, finds that all necessary prerequisites of the law have been legally satisfied and that the Court has jurisdiction of this case and of all the parties.

*Interim Visitation Orders*

The following interim orders, which modify the final divorce rendered on May 7, 2009, are for the safety and welfare and in the best interest of the following child:

NAME: C████████ S███████ D███████
SEX: MALE
BIRTHPLACE: MADERO, TAMAULIPAS
BIRTHDATE: 10██/2001

## PART I: GENERAL TERMS AND CONDITIONS

Except as otherwise explicitly provided, terms and conditions of possession of a child that apply irrespective of the distance between the residence of a parent and the child are as follows:

(1) Surrender of Child by Fabiola Dasque- Fabiola Dasque is ORDERED to surrender the child to Serge Dasque at the beginning of each period of Serge Dasque's possession at the residence of Fabiola Dasque;

(2) Surrender of Child by Serge Dasque- Serge Dasque is ordered to surrender the child to Fabiola Dasque at the residence of Serge Dasque at the end of each period of possession;

(3) Each conservator shall return with the child the personal effects that the child brought at the beginning of the period of possession;

(4) Either parent may designate any competent adult to pick up and return the child, as applicable; a parent or a designated competent adult shall be present when the child is picked up or returned;

(5) A parent shall give notice to the person in possession of the child on each occasion that the parent will be unable to exercise that parent's right of possession for any specified period; repeated failure of a parent to give notice of an inability to exercise possessory rights may be considered as a factor in a modification of those possessory rights; and

(6) Written notice shall be deemed to have been timely made if received or postmarked before or at the time that notice is due.

## PART II: VISITATION SCHEDULE

IT IS ORDERED that Serge Dasque and Fabiola Dasque shall have possession of the child at times mutually agreed to in advance by the parties and, in the absence of mutual agreement, as follows:

*Christmas Vacation*

Serge Dasque and Fabiola Dasque shall have rights of possession of the child as follows:

(1) Serge Dasque shall have possession of the child beginning at 8 a.m. on December 22nd and ending at 8 a.m. on December 25th;

(2) Fabiola Dasque shall have possession of the child beginning at 8 a.m. on December 25th and ending at 8 a.m. on December 28th;

(3) Serge Dasque shall have possession of the child beginning at 8 a.m. on December 28th and ending at 8 a.m. on December 30th;

(4) Fabiola Dasque shall have possession of the child beginning at 8 a.m. on December 30th and ending at 8 a.m. on January 1st;

(5) Serge Dasque shall have possession of the child beginning at 8 a.m. on January 1st and ending at 8 a.m. on January 3rd

(6) Fabiola Dasque shall have possession of the child beginning at 8 a.m. on January 3rd and ending at 6p.m. on January 6th.

*Weekend Visitation.*

(1) Serge Dasque shall have the right to possession of the child every other weekend, beginning at 6 p.m. on every other Friday beginning January 6th, 2011 and ending at 6 p.m. on the following Sunday.

(2) Fabiola Dasque shall have the right to possession of the child ever other weekend, beginning at the time the child's school is regularly dismissed on every other Friday beginning January 13, 2011, and ending at the time the child's school resumes on Monday after the weekend.

*Undesignated Periods of Possession*

Fabiola Dasque shall have the right of possession of the child at all other times not specifically designated in this Possession Order for Serge Dasque.

*Reset of Hearing to Clarify, Correct, and/or Reconsider Rendered Decree of Divorce*

The Court hereby resets Respondent's Motion to Clarify, Correct and/or Reconsider Rendered Decree for February 8, 2012 at 1:30 PM in County Court at Law No. 7 before Honorable Judge Rolando Cantu, 100 E. Cano, Edinburg, TX, 78539. On that date, the Court will hear evidence regarding clarifying and/or modifying the divorce rendered in the above case on May 7, 2009 including but not limited to conservatorship, visitation, child support and property division.

*Pre-Trial Report*

The Court further ORDERS the parties to submit a Joint Pre-Trial Report no later than 15 days prior to the hearing on February 8, 2012.

SIGNED this 19th day of December , 2011.

_____
JUDGE PRESIDING

APPROVED AS TO FORM ONLY:

Felix Ramos
Attorney for Petitioner
State Bar No.: 16508025
425 Nolana Ste. E
McAllen, Texas 78501
Tel: 956-630-6046

Amber L. VanSchuyver
Attorney for Respondent
State Bar No. 24066232
TEXAS RIOGRANDE LEGAL AID, INC.
316 South Closner Blvd.
Edinburg, TX 78539
Tel: (956) 393-6200
Fax: (956) 383-4688

# APPX. K

NO. F-5441-08-7

| | | |
|---|---|---|
| I N THE MATTER OF | § | IN THE COUNTY COURT |
| THE MARRIAGE OF | § | |
| | § | |
| SERGE DASQUE | § | |
| AND | § | |
| FABIOLA AIDEE DASQUE | § | AT LAW #7 |
| | § | |
| AND IN THE INTEREST OF | § | |
| C██████ S██████ D█████ | § | |
| MINOR CHILD | § | HIDALGO COUNTY, TEXAS |

## DECREE OF DIVORCE AND MODIFIED VISITATION ORDER

On May 7, 2009, this case came to be heard for hearing and the court rendered the divorce on that date. The Court heard Respondent's Motion to Reconsider and Clarify the Orders on March 21-22, 2012 and modified the orders as follows.

*Appearances*

Petitioner, Serge Dasque, appeared in person and through attorney of record, Felix Ramos, and announced ready for trial.

Respondent, Fabiola Aidee Dasque, appeared in person and through attorney of record, Amber VanSchuyver, and announced ready for trial.

*Record*

The record of testimony was duly reported by the official court reporter for this court.

*Jurisdiction & Domicile*

The Court finds that the pleadings in this case are in due form and contain all the allegations, information, and prerequisites required by law. The Court, after receiving evidence, finds that it has jurisdiction over this cause of action and the parties and that at least 60 days have elapsed since the date the suit was filed. The Court finds that Petitioner has been a domiciliary of this state for at least a six-month period preceding the filing of this action and a resident of this county for at least a 90-day period preceding the filing of this action. All persons entitled to citation were properly cited.

*Jury*

A jury was waived, and all questions of fact and of law were submitted to the Court.

*Divorce*

The Court finds that the material allegations in Petitioner's divorce petition are substantially correct and have been proven by full and satisfactory evidence.

IT IS ORDERED AND DECREED that Serge Dasque and Fabiola Aidee Dasque, are divorced and that the marriage between them is dissolved as of May 7, 2009.

## CHILD OF THE MARRIAGE

The Court finds that Petitioner and Respondent are the parents of the following child, now under the age of eighteen (18) years, who is not under the continuing, exclusive jurisdiction of any other court:

> NAME: CRISTOPHER SEBASTIAN DASQUE
> SEX: MALE
> BIRTHPLACE: MADERO, TAMAULIPAS
> BIRTHDATE: 10/23/2001

The Court finds no other children of the marriage are expected.

*Findings*

The Court finds that the circumstances of the child, a conservator, or other party affected by the order to be modified have materially and substantially changed since the date of rendition of the divorce on May 7, 2009. The Court finds that the prior order was unworkable. IT IS ORDERED that the requested modification is GRANTED and finds the following modified orders are in the best interest of the child:

IT IS ORDERED AND DECREED that Serge Dasque and Fabiola Aidee Dasque are appointed Joint Managing Conservators of the child.

## RIGHTS AND DUTIES OF JOINT MANAGING CONSERVATORS

IT IS ORDERED AND DECREED that both Joint Managing Conservators shall each retain the right to receive information from the other concerning the health, education, and welfare of the

child and, to the extent possible, the right to confer with the other before making a decision concerning the health, education, and welfare of the child. IT IS ORDERED AND DECREED that both Joint Managing Conservators have a duty to inform the other parent in a timely manner of significant information concerning the health, education, and welfare of the child.

IT IS ORDERED AND DECREED that each parent shall have the duty to inform the other parent if the parent resides with for at least 30 days, marries, or intends to marry a person who the parent knows: 1) is registered as a sex offender under Chapter 62, Code of Criminal Procedure; or 2) is currently charged with an offense for which on conviction the person would be required to register under that chapter. This notice shall be made as soon as practicable but not later than the 40th day after the date the parent begins to reside with the person or the 10th day after the date the marriage occurs, as appropriate. The notice must include a description of the offense that is the basis of the person's requirement to register as a sex offender or of the offense with which the person is charged.

IT IS ORDERED AND DECREED that at all times both Joint Managing Conservators shall retain the following rights:

(1)     to have access to medical, dental, psychological, and educational records of the child;

(2)     to consult with any physician, dentist, or psychologist of the child;

(3)     to consult with school officials concerning the child's welfare and educational status, including school activities;

(4)     to attend school activities;

(5)     to be designated on any records as a person to be notified in case of an emergency; and

(6)     to manage the estate of the child to the extent the estate has been created by the parent or the parent's family.

IT IS ORDERED AND DECREED that, during their respective periods of possession, the Joint Managing Conservator in possession shall have the following rights, duties, and powers:

(1)     the duty of care, control, protection, and reasonable discipline of the child;

(2)     the duty to support the child, including providing the child with clothing, food, shelter, and medical and dental care not involving an invasive procedure;

(3)    the right to consent for the child to medical and dental care not involving an invasive procedure;

(4)    the right to consent for the child to medical, dental, and surgical treatment during an emergency involving immediate danger to the health and safety of the child; and

(5)    the right to direct the moral and religious training of the child.

IT IS ORDERED AND DECREED that Fabiola Dasque and Serge Dasque shall have the following independent rights, duties, and powers:

(1)    the power to consent to medical, dental, and surgical treatment involving invasive procedures, and to psychiatric and psychological treatment;

(2)    the right to consent to psychiatric and psychological treatment of the child;

(3)    the right to make decisions concerning the child's education;

(2)    the power to represent the child in legal action and to make other decisions of substantial legal significance concerning the child;

(3)    the power to consent to marriage and to enlistment in the armed forces of the United States;

(4)    the right to the services and earnings of the child;

(5)    except when a guardian of the child's estate or a guardian or attorney ad litem has been appointed for the child, the power as an agent of the child to act in relation to the child's estate if the child's action is required by a state, the United States, or a foreign government; and

(6)    the right to manage the estate of the child to the extent the estate has been created by community property or the joint property of the parents.

IT IS ORDERED AND DECREED that Fabiola Dasque shall have the exclusive power to receive and give receipt for periodic payments for the support of the child and to hold or disburse these funds for the benefit of the child.

IT IS FURTHER ORDERED AND DECREED that the residence of the child shall be restricted to Hidalgo County, Texas.

## VISITATION RIGHTS

IT IS ORDERED AND DECREED that Serge Dasque may have possession of the child at

any and all times mutually agreed to in advance by Petitioner and Respondent and in the absence of mutual agreement by the parties, shall have possession of the child under the specified terms set out in the following 'Possession Order.'

## POSSESSION ORDER
## PART I: GENERAL TERMS AND CONDITIONS

Except as otherwise explicitly provided, terms and conditions of possession of a child that apply irrespective of the distance between the residence of a parent and the child are as follows:

(1)    Fabiola Aidee Dasque shall surrender the child to Serge Dasque at the beginning of each period of Serge Dasque's possession at the residence of Fabiola Aidee Dasque;

(2)    Serge Dasque shall return the child to the residence of Fabiola Aidee Dasque at the end of each period of possession;

(3)    each conservator shall return with the child the personal effects that the child brought at the beginning of the period of possession;

(4)    either parent may designate any competent adult to pick up and return the child, as applicable; a parent or a designated competent adult shall be present when the child is picked up or returned;

(5)    a parent shall give notice to the person in possession of the child on each occasion that the parent will be unable to exercise that parent's right of possession for any specified period; repeated failure of a parent to give notice of an inability to exercise possessory rights may be considered as a factor in a modification of those possessory rights;

(6)    written notice shall be deemed to have been timely made if received or postmarked before or at the time that notice is due; and,

(7)    if a conservator's time of possession of the child ends at the time school resumes and for any reason the child is not or will not be returned to school, the conservator in possession of the child shall immediately notify the school and the other conservator that the child will not be returned to school on time.

### PART II:  PARENTS WHO RESIDE 100 MILES OR LESS APART

Weekend Visitation.  Except as otherwise explicitly provided, Serge Dasque shall have the right to possession of the child every other weekend, beginning at the time the child is dismissed from school on Thursday beginning March 29, 2012 and ending at 6 p.m. on the following Sunday.

Vacations and Holidays. The following provisions govern possession of the child for vacations and for certain specific holidays and supersede any conflicting weekend periods of possession provided above.

Christmas Vacation. Serge Dasque and Fabiola Aidee Dasque shall have rights of possession of the child as follows:

(1)     Serge Dasque shall have possession of the child in even-numbered years beginning at 6 p.m. on the day the child is dismissed from school for the Christmas school vacation and ending at noon on December 26th, and Fabiola Aidee Dasque shall have possession for the same period in odd-numbered years;

(2)     Serge Dasque shall have possession of the child in odd-numbered years beginning at noon on December 26th and ending at 6 p.m. on the day before school resumes after that vacation, and Fabiola Aidee Dasque shall have possession for the same period in even-numbered years.

Thanksgiving. Serge Dasque shall have possession of the child in odd-numbered years beginning at 6 p.m. on the day the child is dismissed from school before Thanksgiving and ending at 6 p.m. on the following Sunday, and Fabiola Aidee Dasque shall have possession for the same period in even-numbered years.

School Spring Break. Serge Dasque shall have possession of the child in even-numbered years beginning at 6 p.m. on the day the child school is dismissed for the school's spring vacation and ending at 6 p.m. on the day before school resumes after that vacation, and Fabiola Aidee Dasque shall have possession for the same period in odd-numbered years.

Summer Vacation. If Serge Dasque gives Fabiola Aidee Dasque written notice by April 1 of each year specifying an extended period or periods of summer possession, Serge Dasque shall have possession of the child for 30 days beginning no earlier than the day after the child's school is dismissed for the summer vacation and ending no later than seven days prior to school resuming at the end of the summer vacation, to be exercised in no more than two separate periods of at least seven consecutive days each; or if Serge Dasque does not give Fabiola Aidee Dasque written notice by April 1 of each year specifying an extended period or periods of summer possession, Serge Dasque shall have possession of the child for 30 consecutive days beginning at 6 p.m. on July 1 and ending at 6 p.m. on July 31. Serge Dasque is ordered to enroll the child in some form of extracurricular activity during his extended summer visitation.

If Fabiola Aidee Dasque gives Serge Dasque written notice by April 15 of each year, Fabiola Aidee Dasque shall have possession of the child on any one weekend beginning Friday at 6 p.m. and ending at 6 p.m. on the following Sunday during any one period of possession elected by Serge Dasque under the preceding paragraph, provided that Fabiola Aidee Dasque picks up the child from Serge Dasque and returns the child to that same place.

If Fabiola Aidee Dasque gives Serge Dasque written notice by April 15 of or gives Serge Dasque 14 days' written notice on or after April 16 of each year Fabiola Aidee Dasque may designate one weekend beginning no earlier than the day after the child's school is dismissed for the summer vacation and ending no later than seven days prior to school resuming at the end of the summer vacation, during which an otherwise scheduled weekend period of possession by Serge Dasque will not take place, provided that the weekend so designated does not interfere with Serge Dasque's period or periods of extended summer possession or with Father's Day if Serge Dasque is the father of the child.

Child's Birthday. The parent not otherwise entitled under this standard order to present possession of a child on the child's birthday shall have possession of the child beginning at 6 p.m. and ending at 8 p.m. on that day, provided that said parent picks up the child from the residence of the conservator entitled to possession and returns the child to that same place.

Father's Day. The father shall have possession of the child beginning at 6:00 p.m. on the Friday preceding Father's Day and ending on Father's day at 6 p.m., provided that, if he is not otherwise entitled under this standard order to present possession of the child, he picks up the child from the residence of the conservator entitled to possession and returns the child to that same place.

Mother's Day. The mother shall have possession of the child beginning at 6:00 p.m. on the Friday preceding Mother's Day and ending on Mother's day at 6 p.m., provided that, if she is not otherwise entitled under this standard order to present possession of the child, she picks up the child from the residence of the conservator entitled to possession and returns the child to that same place.

*Undesignated Periods of Possession*

Fabiola Dasque shall have the right of possession of the child at all other times not specifically designated in this Possession Order for Serge Dasque.

**This concludes the Possession Order.**

The possession and access ordered above applies to the child the subject of this suit while the child is under the age of 18 years and not otherwise emancipated.

**PRIOR ORDER**

The Court FINDS that on *5/7/2009* the Court ordered *SERGE DASQUE* to pay current child support of *$150.00 monthly*, beginning *6/1/2009* and *monthly* thereafter.

**FINDING ON CHILD SUPPORT ARREARS**

The Court FINDS and CONFIRMS that *SERGE DASQUE* is in arrears on child support in the amount of **$5,100.00** as of **March 22, 2012**, and the arrears are assigned to the Office of the Attorney General pursuant to Texas Family Code Chapter 231.

## CHILD SUPPORT JUDGMENT

A judgment is granted against *SERGE DASQUE* and in favor of the Attorney General in the amount of **$5,100.00**, with interest as provided by law of the State of Texas, at the rate of 6% per annum for collection and distribution according to law. This includes all unpaid child support and any balance owed on previously confirmed arrearages or retroactive support judgments as of the specified date.

The Court ORDERS *SERGE DASQUE*, Obligor, to pay said child support judgment by paying $200.00 each month beginning the 1st day of **April, 2012**, payable on or before that date and on or before the same day of each month thereafter until the arrearage is paid in full, or on the termination of current support for any child the subject of this suit.

If *SERGE DASQUE* has not paid the judgment in full by the date his current child support obligation ends, the Court ORDERS him to pay the remainder of said judgment by paying $350.00 each month on or before the same day of each month until the arrearage is paid in full. The withholding order authorized herein shall include such payments, but nothing herein shall prohibit the use of other collection methods authorized by law.

## NOTICE TO OBLIGOR

Past due support is not an installment debt and the entire judgment is now due and owing. The Attorney General may take whatever enforcement remedies deemed necessary including any remedies required by federal or state laws to collect this judgment, even if regular periodic payments on this judgment are being made.

*SERGE DASQUE* is placed on notice that should he fail to pay current child and medical support, or toward the arrearage as ordered herein, the Attorney General may pursue an action to suspend any or all licenses he may have.

Pursuant to Texas Family Code § 157.269, the Court retains jurisdiction over this matter until all current support and all support arrearages, including interest and any applicable fees and costs, have been paid.

## CHILD SUPPORT

The Court, having considered the circumstances of the parents, finds that Respondent is able to make child support payments and that payments of support would be in the best interest of the child.

IT IS ORDERED AND DECREED that **Serge Dasque** is obligated to pay and, subject to the provisions for withholding from earnings for child support specified below, shall pay to **Fabiola Aidee Dasque** child support of $150.00 per month, with the first payment being due and payable on April 1, 2012, and a like payment being due and payable on the same day of each month thereafter until the first month following the date of the earliest occurrence of one of the events specified below:

(1)     a child reaches the age of 18 years, provided that, if the child is fully enrolled in an accredited secondary school in a program leading toward a high school diploma, or enrolled in courses for joint high school and junior college credit, the periodic child support payments shall continue to be due and paid until the end of the school year in which the child graduates:

(2)     a child marries;

(3)     a child dies;

(4)     a child's disabilities are otherwise removed for general purposes;

(5)     a child is otherwise emancipated; or

(6)     further order modifying this child support.

The Court finds that the following orders regarding employer withholding are in the best interest of the child. On this date, the Court signed an Employer's Order to Withhold Earnings for Child Support.

IT IS ORDERED AND DECREED that any employer of Serge Dasque shall be ordered to withhold from earnings for child support from the disposable earnings of Serge Dasque. 'Earnings' means compensation paid or payable to Serge Dasque for personal services, whether called wages, salary, compensation earned as an independent contractor, overtime pay, severance pay, commission, bonus, or otherwise, and includes periodic payments pursuant to a pension, annuity, workers' compensation, disability and retirement program, and unemployment benefits. 'Disposable earnings' is that part of the earnings remaining after deduction of any amounts required by law to be withheld, union dues, nondiscretionary retirement contributions, and medical, hospitalization, and disability insurance coverage for Serge Dasque and her child. Depending on

the regularly scheduled wage and salary payments established by the employer, the employer shall be ordered to withhold from earnings for child support on the schedule appropriate to the employer's payroll period as follows: $150.00 monthly, $75.00 semimonthly, $69.23 biweekly, $34.61 weekly, provided that the amount of income withheld for any pay period shall not exceed 50 percent of the disposable earnings of Serge Dasque. The first payment is due and payable no later than the first pay period following the date on which the Employer's Order to Withhold Earnings for Child Support is served on the employer. The employer shall continue to withhold income as long as Serge Dasque remains in employment.

IT IS ORDERED AND DECREED that Serge Dasque shall notify this Court and Fabiola Aidee Dasque by U.S. certified mail, return receipt requested, of any change of address and of any termination of employment. This notice shall be given no later than seven days after the change of address or the termination of employment. This notice or a subsequent notice shall also provide the current address of Serge Dasque and the name and address of her current employer, whenever that information becomes available.

IT IS ORDERED AND DECREED that, on the request of a prosecuting attorney, the Attorney General, Fabiola Aidee Dasque, or Serge Dasque, the Clerk of this Court shall cause a certified copy of the Employer's Order to Withhold Earnings for Child Support to be delivered to any employer.

IT IS ORDERED AND DECREED that all amounts withheld from the disposable earnings of Serge Dasque by the employer and paid in accordance with the order to that employer shall constitute a credit against the child-support obligation. Payment of the full amount of child support ordered paid by this decree through the means of withholding from earnings shall discharge the child-support obligation. If the amount withheld from earnings and credited against the child-support obligation is less than 100 percent of the amount ordered to be paid by this decree, the balance due remains an obligation of Serge Dasque, and it is hereby ORDERED AND DECREED that Serge Dasque pay the balance due directly to the Registry of the Court, as specified below.

IT IS ORDERED AND DECREED that all payments for child support are to be marked for Cause Number F-5441-08-5 and paid by cash, cashier's check, or money order payable to the Office of the Attorney General, Texas Child Support Disbursement Unit, P.O. Box 659791, San Antonio, Texas 78265-9791, and thereafter promptly remitted to Fabiola Aidee Dasque, for the support of

the child.

IT IS ORDERED AND DECREED that Serge Dasque shall pay, when due, all fees charged by the agency through whom child support is paid.

## NO CREDIT FOR INFORMAL PAYMENTS

The Court ORDERS **SERGE DASQUE** to pay all child support through the registry prescribed in this decree, and any direct payments by him or any expenditures incurred during his periods of possession shall be deemed in addition to and not in lieu of the child support ordered herein.

## WARNINGS TO PARTIES

**FAILURE TO OBEY A COURT ORDER FOR CHILD SUPPORT OR FOR POSSESSION OF OR ACCESS TO A CHILD MAY RESULT IN FURTHER LITIGATION TO ENFORCE THE ORDER, INCLUDING CONTEMPT OF COURT. A FINDING OF CONTEMPT MAY BE PUNISHED BY CONFINEMENT IN JAIL FOR UP TO SIX MONTHS, A FINE OF UP TO $500.00 FOR EACH VIOLATION, AND A MONEY JUDGMENT FOR PAYMENT OF ATTORNEY'S FEES AND COURT COSTS.**

**FAILURE OF A PARTY TO MAKE A CHILD SUPPORT PAYMENT TO THE PLACE AND IN THE MANNER REQUIRED BY A COURT ORDER MAY RESULT IN THE PARTY'S NOT RECEIVING CREDIT FOR MAKING THE PAYMENT.**

**FAILURE OF A PARTY TO PAY CHILD SUPPORT DOES NOT JUSTIFY DENYING THAT PARTY COURT-ORDERED POSSESSION OF OR ACCESS TO A CHILD. REFUSAL BY A PARTY TO ALLOW POSSESSION OF OR ACCESS TO A CHILD DOES NOT JUSTIFY FAILURE TO PAY COURT-ORDERED SUPPORT TO THAT PARTY.**

## HEALTH INSURANCE

No parent has access to private health insurance at a reasonable cost. IT IS ORDERED AND DECREED that health insurance shall be provided for the child as follows:

The Court finds that the following orders regarding health insurance are in the best interest of the child.

## GOVERNMENT MEDICAL ASSISTANCE PROGRAM OR HEALTH PLAN

**Fabiola Aidee Dasque** is ORDERED to maintain such health coverage in full force and effect on each child subject of this suit as long as child support is payable for that child, by paying any and all applicable fees required for the coverage, including but not limited to, enrollment fees, and premiums.

## CASH MEDICAL SUPPORT

Pursuant to Texas Family Code §154.182(b)(3), **Serge Dasque** is ORDERED to pay **Fabiola Aidee Dasque** cash medical support, as additional child support, of **$63.00** each month, beginning the **1st day of April 2012**, payable on or before the same day of each month thereafter until the termination of current child support for the child under this order.

It is ORDERED that the cash medical support provisions of this order shall be an obligation of the estate of **Serge Dasque**.

**Serge Dasque** is allowed to discontinue payment of cash medical support for the period of time **Serge Dasque** is providing coverage if:

1) health insurance for the child becomes available to **Serge Dasque** at a reasonable cost; and

2) **Serge Dasque** enrolls the child in the insurance plan; and

3) **Serge Dasque** provides **Fabiola Aidee Dasque** and the Title IV-D agency the information required under Texas Family Code §154.185.

Uninsured Expenses. Each party is ORDERED AND DECREED to pay 50% of all health care expenses not paid by insurance and incurred by or on behalf of the parties' child, including, without limitation, the yearly deductible and medical, prescription drug, dental, eye care, ophthalmologic, and orthodontic charges, for as long as child support is payable under the terms of this decree.

Payment of Uninsured Expenses. IT IS ORDERED AND DECREED that the party who paid for a health care expense on behalf of the child shall submit to the other party any and all forms, receipts, bills, and statements reflecting the uninsured portion of the medical or health

care expenses the paying party incurs on behalf of the child within ten days after he or she receives them. IT IS ORDERED AND DECREED that, within ten days after the nonpaying party receives the forms, receipts, bills, or statements, that party shall pay his or her share of the uninsured portion of the medical or health care expenses either by paying the health care provider directly or by reimbursing the paying party for any advance payment over and above the paying party's share of the expenses.

WARNING TO PARTIES

**ANY OBLIGOR WHO FAILS TO PROVIDE HEALTH INSURANCE AS ORDERED IS LIABLE FOR ANY NECESSARY MEDICAL EXPENSES OF THE CHILD WITHOUT REGARD TO WHETHER THE EXPENSES WOULD HAVE BEEN PAID BY HEALTH INSURANCE HAD IT BEEN PROVIDED.**

Each party is ORDERED AND DECREED to keep the other party fully and promptly informed of his or her current street address of residence, home telephone number, name of employer, place of employment, and work telephone number and of the address of the child's school or day-care center. Each party is ORDERED AND DECREED to give written notice to each other party of an intended change in the party's current residence address, mailing address, home telephone number, name of employer, address of employment, and work telephone number. IT IS ORDERED AND DECREED that the party shall give written notice by registered or certified mail of an intended change in the required information to each other party on or before the 60th day before the change is made. If the party does not know or could not have known of the change in sufficient time to provide the 60 day notice, IT IS ORDERED AND DECREED that the party shall provide the written notice of the change on or before the 5th day after the date the party knew of the change.

Each party's current address, phone, and employer information are listed below:

Name:       Serge Dasque
Address:    917 Lexington Circle, Apt. A, Edinburg, Texas 78539
Phone:      (956) 789-0713
Employer:   La Joya ISD

Name:       Fabiola Aidee Dasque
Address:    1303 Brian Rd Apt. 11 Mission TX 78572

Phone: (956) 562-2946
Employer: La Joya ISD

EACH PERSON WHO IS A PARTY TO THIS ORDER IS ORDERED TO NOTIFY EACH OTHER PARTY WITHIN TEN DAYS AFTER THE DATE OF ANY CHANGE IN THE PARTY'S CURRENT RESIDENCE ADDRESS, MAILING ADDRESS, HOME TELEPHONE NUMBER, NAME OF EMPLOYER, ADDRESS OF EMPLOYMENT, OR WORK TELEPHONE NUMBER. THE PARTY IS ORDERED TO GIVE NOTICE OF AN INTENDED CHANGE IN ANY OF THE REQUIRED INFORMATION TO EACH OTHER PARTY ON OR BEFORE THE 60TH DAY BEFORE THE INTENDED CHANGE. IF THE PARTY DOES NOT KNOW OR COULD NOT HAVE KNOWN OF THE CHANGE IN SUFFICIENT TIME TO PROVIDE 60-DAY NOTICE, THE PARTY IS ORDERED TO GIVE NOTICE OF THE CHANGE ON OR BEFORE THE FIFTH DAY AFTER THE DATE THAT THE PARTY KNOWS OF THE CHANGE.

THE DUTY TO FURNISH THIS INFORMATION TO EACH OTHER PARTY CONTINUES AS LONG AS ANY PERSON, BY VIRTUE OF THIS ORDER, IS UNDER AN OBLIGATION TO PAY CHILD SUPPORT OR ENTITLED TO POSSESSION OF OR ACCESS TO A CHILD.

NOTICE TO ANY PEACE OFFICER IN THE STATE OF TEXAS: YOU MAY USE REASONABLE EFFORTS TO ENFORCE THE TERMS OF CHILD CUSTODY SPECIFIED IN THIS ORDER. A PEACE OFFICER WHO RELIES ON THE TERMS OF A COURT ORDER AND THE OFFICER'S AGENCY ARE ENTITLED TO THE APPLICABLE IMMUNITY AGAINST ANY CLAIM, CIVIL OR OTHERWISE, REGARDING THE OFFICER'S GOOD FAITH ACTS PERFORMED IN THE SCOPE OF THE OFFICER'S DUTIES IN ENFORCING THE TERMS OF THE ORDER THAT RELATE TO CHILD CUSTODY. ANY PERSON WHO KNOWINGLY PRESENTS FOR ENFORCEMENT AN ORDER THAT IS INVALID OR NO LONGER IN EFFECT COMMITS AN OFFENSE THAT MAY BE PUNISHABLE BY CONFINEMENT IN JAIL FOR AS LONG AS TWO YEARS AND A FINE OF AS MUCH AS $10,000.

FAILURE BY A PARTY TO OBEY THE ORDER OF THIS COURT TO PROVIDE EACH OTHER PARTY WITH THE CHANGE IN THE REQUIRED INFORMATION MAY RESULT IN FURTHER LITIGATION TO ENFORCE THE ORDER, INCLUDING CONTEMPT OF COURT. A FINDING OF CONTEMPT MAY BE PUNISHED BY CONFINEMENT IN JAIL FOR UP TO SIX MONTHS, A FINE OF UP TO $500 FOR EACH VIOLATION AND A MONEY JUDGMENT FOR PAYMENT OF ATTORNEY'S FEES AND COURT COSTS.

*Division of Marital Estate*

The Court finds that the parties own community property, which should be divided in an

equitable manner.

IT IS THEREFORE ORDERED AND DECREED that the community property owned by the parties shall be divided as follows:

IT IS ORDERED AND DECREED that Petitioner, Serge Dasque is awarded the following property as his sole and separate property, and Respondent is divested of all right, title, interest in, and claim to such property:

2003 Ford Explorer VIN No. _____;

All household furniture, furnishings, fixtures, goods, appliances, equipment and vehicles that are presently in the possession of or subject to the sole control of Petitioner;

All clothing, jewelry, and other personal effects in the possession of or subject to the sole control of Petitioner;

All accrued causes of action, whether matured, contingent, or pending, to which Petitioner is or may become a party, together with any and all proceeds from such litigation; and

Any and all stocks, bonds, and sums of cash in the possession of or subject to the sole control of Petitioner, including money on account in banks, savings institutions, or other financial institutions, and including pension funds and/or retirement investments, which accounts stand in Petitioner's sole name or from which Petitioner has the sole right to withdraw funds or which are subject to Petitioner's sole control.

All property awarded to Petitioner shall be subject to any indebtedness charged against it.

IT IS ORDERED AND DECREED that Respondent, Fabiola Aidee Dasque is awarded the following property as her sole and separate property, and Petitioner is divested of all right, title, interest in, and claim to such property:

All household furniture, furnishings, fixtures, goods, appliances, equipment, and vehicles presently in the possession of or subject to the sole control of Respondent;

All clothing, jewelry, and other personal effects in the possession of or subject to the sole control of Respondent;

All accrued causes of action, whether matured, contingent, or pending, to which Respondent is or may become a party, together with any and all proceeds from such litigation; and

Any and all stocks, bonds, and sums of cash in the possession of or subject to the sole control of Respondent, including money on account in banks, savings institutions, or other financial institutions, and including pension funds and/or retirement investments, which accounts stand in Respondent's sole name or from which Respondent has the sole right to withdraw funds or which are subject to Respondent's sole control.

All property awarded to Respondent shall be subject to any indebtedness charged against it.

IT IS FURTHER ORDERED AND DECREED, as a part of the division of the estate of the parties, that any indebtedness or liability not expressly assumed by a party under this decree is to be paid by the party incurring the indebtedness or liability.

IT IS FURTHER ORDERED AND DECREED, as a part of the division of the estate of the parties, that any indebtedness or liability not expressly assumed by a party under this decree is to be paid by the party incurring the indebtedness or liability.

The Court finds that the parties have accumulated community debt, which should be divided in an equitable manner.

IT IS THEREFORE ORDERED AND DECREED that the community debt shall be divided as follows:

IT IS ORDERED AND DECREED that Petitioner, Serge Dasque, shall pay, as a part of the division of the estate of the parties, the following and shall indemnify and hold Respondent and Respondent's property harmless from any failure to so discharge these items:

H-1.   The balance due, including principal, interest, and all other charges, on the promissory note secured by a lien on the 2003 Ford Explorer motor vehicle awarded to the husband.

H-2.   All debts, charges, liabilities, and other obligations incurred solely by Serge Dasque from and after November 21, 2008 unless express provision is made in this decree to the contrary.

H-3.   Seventy-five (75) percent of the following debts, charges, liabilities, and obligations:

1.   Bank of America credit card, Account Number 5490-3573-1496-5922 opened on April of

2008, amount owed $4,717.22 (as of November of 2008).

2. Citicard credit card, Account Number 5419-3109-3304-6754 opened on April of 2000, amount owed $664.69 (as of November of 2008).

3. Citibank credit card, Account Number 5424-1803-3436-7627 opened on April of 2000, amount owed $4,664.98 (as of May of 2009).

4. Citi Advantage Mastercard credit card, Account Number 5466-1601-6689-9516 opened on December of 1998, amount owed $1,414.90 (as of November of 2008).

5. Sam's Club / GE Money Bank, Account Number 77141000081344111 opened on August of 2001, amount owed $568.91 (as of November of 2008).

6. Sears Mastercard, Account Number 5121-0717-1276-7759 opened on January of 2000, amount owed, $651.98 (as of November of 2008).

7. HSBC Bank GM Card, Account Number 5466-4102-6170-0832, opened on July of 1999, amount owed $0.00 (as of November of 2008).

8. American Express Blue credit card, Account Number 372371032871001, opened on November of 2001, amount owed $2,552.93 (as of November of 2008).

9. American Express Hilton Honors credit card, Account Number 3713-2650-3581-1001, opened on June of 2005, amount owed $450.61 (as of November of 2008).

10. American Express credit card, Account Number 37156088071000, opened November of 2001, amount owed $331.19 (as of May of 2009).

11. Chase BP Private Label credit card, Account Number 4227651025792341, opened June of 2000, amount owed $215.00 (as of May of 2009).

12. Citi Mastercard credit card, Account Number 5256-5003-2465-0125 opened on October of 2007, amount owed $590.00 (as of November of 2008).

13. American Express Delta Sky Miles credit card, Account Number 3717-4604-0611-0005 opened on July of 2005, amount owed $3,907.03 (as of May of 2009).

14. Chase Bank credit card, Account Number 4444-0010-0863-5066 opened on March of 1999, amount owed 9,704.51 (as of November of 2008).

15. Discover credit card, Account Number 6011-0083-7022-7636, opened on March of 1999, amount owed $4,145.06 (as of November of 2008).

16. Discover credit card, Account Number 6011-2987-1548-9112, opened on January of 2000, amount owed $8,357.00 (as of May of 2009).

IT IS ORDERED AND DECREED that Respondent, Fabiola Dasque, shall pay, as part of the division of the estate of the parties, the following and shall indemnify and hold Petitioner and Petitioner's property harmless from any failure to so discharge these items:

W-1. All debts, charges, liabilities, and other obligations incurred solely by Fabiola Dasque from and after November 21, 2008 unless express provision is made in this decree to the contrary.

W-2. Twenty-five (25) percent of the following debts, charges, liabilities, and obligations:

1. Bank of America credit card, Account Number 5490-3573-1496-5922 opened on April of 2008, amount owed $4,717.22 (as of November of 2008).

2. Citicard credit card, Account Number 5419-3109-3304-6754 opened on April of 2000, amount owed $664.69 (as of November of 2008).

3. Citibank credit card, Account Number 5424-1803-3436-7627 opened on April of 2000, amount owed $4,664.98 (as of May of 2009).

4. Citi Advantage Mastercard credit card, Account Number 5466-1601-6689-9516 opened on December of 1998, amount owed $1,414.90 (as of November of 2008).

5. Sam's Club / GE Money Bank, Account Number 77141000081344111 opened on August of 2001, amount owed $568.91 (as of November of 2008).

6.  Sears Mastercard, Account Number 5121-0717-1276-7759 opened on January of 2000, amount owed, $651.98 (as of November of 2008).

7.  HSBC Bank GM Card, Account Number 5466-4102-6170-0832, opened on July of 1999, amount owed $0.00 (as of November of 2008).

8.  American Express Blue credit card, Account Number 372371032871001, opened on November of 2001, amount owed $2,552.93 (as of November of 2008).

9.  American Express Hilton Honors credit card, Account Number 3713-2650-3581-1001, opened on June of 2005, amount owed $450.61 (as of November of 2008).

10. American Express credit card, Account Number 37156088071000, opened November of 2001, amount owed $331.19 (as of May of 2009).

11. Chase BP Private Label credit card, Account Number 4227651025792341, opened June of 2000, amount owed $215.00 (as of May of 2009).

12. Citi Mastercard credit card, Account Number 5256-5003-2465-0125 opened on October of 2007, amount owed $590.00 (as of November of 2008).

13. American Express Delta Sky Miles credit card, Account Number 3717-4604-0611-0005 opened on July of 2005, amount owed $3,907.03 (as of May of 2009).

14. Chase Bank credit card, Account Number 4444-0010-0863-5066 opened on March of 1999, amount owed 9,704.51 (as of November of 2008).

15. Discover credit card, Account Number 6011-0083-7022-7636, opened on March of 1999, amount owed $4,145.06 (as of November of 2008).

16. Discover credit card, Account Number 6011-2987-1548-9112, opened on January of 2000, amount owed $8,357.00 (as of May of 2009).

IT IS ORDERED AND DECREED that each party shall pay, as a part of the division of the estate of the parties, any and all debts incurred by that party, and each party shall indemnify and hold each other's property harmless from any failure to so discharge any such debts.

IT IS FURTHER ORDERED AND DECREED that the Petitioner and Respondent shall execute all instruments necessary to effect this Decree and that the parties herein shall have all appropriate and necessary writs, execution and process, as many and as often as necessary to accomplish the execution and final disposition of this judgment.

*Court Costs*

Costs of court are to be borne by the party by whom such costs were incurred.

*Clarifying Order*

Without affecting the finality of this Decree of Divorce, this Court expressly reserves the right to make orders necessary to clarify and enforce this decree.

*Relief Not Granted*

IT IS ORDERED AND DECREED that all relief requested in this cause and not expressly granted is denied.

*Date of Judgment*

This divorce judicially PRONOUNCED AND RENDERED in County Court No. 5 in Edinburg, Hidalgo County, Texas, on May 7, 2009 and further noted on the court's docket sheet on the same date, but modified on March 22, 2012. This order was signed on

April 20th 2012.

JUDGE PRESIDING

DATE 5/28/15

A true copy I certify
LAURA HINOJOSA
District Clerk, Hidalgo County, Texas
By_____ Deputy#24

APPROVED AS TO FORM ONLY:

Felix Ramos
Attorney for Petitioner
State Bar No.: 24041124
KING LAW FIRM
3409 North 10th Street
McAllen, Texas 78501
Tel: 956-687-6294
Fax: 956-687-5514

Amber L. VanSchuyver
Attorney for Respondent
State Bar No. 24066232
TEXAS RIOGRANDE LEGAL AID, INC.
316 South Closner Blvd.
Edinburg, TX 78539
Tel: (956) 393-6200
Fax: (956) 383-4688